# Staunton.

Jenkins & Cutchin v. Waller & Jordan.

Howell v. Whitehill.

September 17th, 1885.

1. Injunctions—*Dissolution—Continuance.*—It rests in the sound discretion of the court to dissolve an interlocutory injunction upon the coming in of the answer denying the equities of the bill, or to continue it to a final hearing on the merits, especially where fraud is the *gravamen* of the bill, or where dissolution would result in greater injury than continuance till hearing.

2. Idem—*Continuance—Cases at bar.*—Mercantile firms having on hand large stocks of perishable goods, confessed judgments for large sums in favor of certain preferred creditors. Executions were issued and levied, and the goods advertised for sale. Unpreferred creditors bring their bill charging fraud in the confession of said judgments, usury in the debts whereon the judgments were founded, want of jurisdiction in the courts wherein they were confessed, etc., and obtain injunction to sale, and appointment of receiver to take charge of the goods, and sell same publicly or privately, upon giving bond in sufficient penalty. Judgment creditors present their answers to the bill, and move to dissolve injunction in vacation. No depositions had been taken; but affidavits sustain the allegations of the bill, and receiver had executed ample bond and taken possession of the goods. The motion to dissolve was overruled, and the injunction continued to the hearing on the merits, the decision of all questions being reserved until then:

Held:

Such action is sustained by sound judicial discretion under the circumstances, and should be affirmed.

The appeals in the two causes above styled were argued at Richmond but decided at Staunton.

The first is from three decrees of the circuit court of Southampton county rendered in June and July, 1883, in the cause of Waller & Jordan and als, plaintiffs, against Jenkins & Cutchin and als, defendants.

The second is from decrees of the circuit court of Isle of Wight county rendered in June, 1883, in the cause of Howell & Co. and als, plaintiffs, against Whitehill & Co. and als, defendants.

The facts in the two causes are so exactly similar in all respects that they were argued and submitted as one cause, and the opinion which states the facts of the first cause is exponential of the facts of the last.

*White & Garnett, Baker & Son* and *H. R. Griffin,* for the appellants

*R. R. Prentis,* for the appellees.

FAUNTLEROY, J., delivered the opinion of the court.

The facts necessary to be stated are as follows, viz: On the 27th of June, 1883, the plaintiffs, Waller & Jordan and others, filed their bill in the clerk's office of the circuit court of Southampton, Virginia, alleging that William H. Jenkins, J. F. Cutchin, Joel H. Cutchin· and C. A. Cutchin, merchants and partners, trading as Jenkins & Cutchin, and doing business in the town of Franklin, Southampton county, Virginia, are justly indebted to the said complainants, Waller & Jordan, in the sum of $102, by an itemized account filed with the bill, and marked Exhibit No. 1; to Sickel, Hellen & Co. in the sum of $330.84, by an account filed with the bill and marked Exhibit No. 2; to Bruff, Maddox & Faulkner in the sum of $870.19, by an account filed with the bill and marked Exhibit No. 3; to J. Whitehill & Co. in the sum of $688.50, by an account filed with the bill and marked Exhibit No. 4; aggregating an indebtedness to the

said complainants of $1991.53; the consideration of all which being goods, wares and merchandise recently bargained, sold and delivered to the said Jenkins & Cutchin by the said complainants, respectively, in the usual course of trade, and for which complainants have never been paid. That the said Jenkins & Cutchin have recently purchased and now have in their store in Franklin, Virginia, a very large stock of general merchandise, supposed to be worth over $20,000. That on the 14th day of June, 1883, in the clerk's office of the circuit court of the city of Norfolk, the said William H. Jenkins and J. F. Cutchin confessed a judgment in favor of the said Joel H. Cutchin and C. A. Cutchin, merchants and partners trading as J. H. Cutchin & Co., for the sum of $11,584.77, with interest thereon from June 8, 1883, until paid, and $18.20 costs. That on the 15th day of June, 1883, in the clerk's office of the circuit court of the city of Norfolk, the said William H. Jenkins and J. F. Cutchin confessed a judgment in favor of J. J. Cutchin for the sum of $1225, with interest thereon from the 8th day of June, 1883, until paid, and $7.90 costs; and also a judgment in favor of M. L. T. Davis and B. D. Thomas, merchants and partners, trading as M. L. T. Davis & Co., for the sum of $1283.66, with interest thereon from the 8th day of June, 1883, until paid, and $7.90 costs. That executions of *fieri facias*, founded upon the said judgments, respectively, were immediately issued and placed in the hands of W. W. Briggs, sheriff of Southampton county, who levied the same upon the said stock of general merchandise in the said store of Jenkins & Cutchin in the said town of Franklin.

The said complainants charge, that the said confessed judgments, writs of *fieri facias*, and levies made thereunder, are, each, illegal, and null and void as to complainants, because the supposed causes of action upon which the said suits are based, nor any part of either of them, arose in the city of Norfolk, but the same, and each and every part of the said supposed causes of action, arose in Southampton county, Virginia; and

because the defendants, William H. Jenkins and J. F. Cutchin, neither of them, do not reside in the city of Norfolk, but are both residents of Southampton county, Virginia; and, therefore, that the circuit court of the said city of Norfolk, had no jurisdiction in the said actions at law, or authority to render the said judgments; and that the clerk of the said circuit court of Norfolk city, had no authority to issue the said writs of *fieri facias*, because the term of the court at which the said judgments would become final had not ended, nor even begun, nor had the said circuit court of the city of Norfolk entered any order allowing executions to be issued in the said cases; and that, therefore, the said executions do not create or operate any lien upon the said stock of general merchandise.

That the said W. W. Briggs, sheriff of Southampton county, proposes to sell the said stock of general merchandise, in Franklin, at public auction, for cash, on July 2d, 1883; that the sale of so large a quantity of goods, for cash, in so small a place as Franklin, and without extensive advertisement, would be a great wrong to complainants, because of the sacrifice of their said property at prices much below its real value.

That the said Jenkins and Cutchin are insolvent and heavily indebted; and that the said confessions of judgment were made in pursuance of a collusive bargain between the said William H. Jenkins, J. F. Cutchin, Joel H. Cutchin, C. A. Cutchin and J. J. Cutchin, with intent on their part to hinder, delay and defraud the complainants and other creditors of Jenkins & Cutchin; and that the said bargain, judgments and executions, are founded upon considerations not deemed valuable in law, and are voluntary, fraudulent and void as to complainants.

The bill further charges, that the said Joel H. Cutchin and C. A. Cutchin, are partners of the said William H. Jenkins and J. F. Cutchin, jointly interested in the profits of the business of Jenkins & Cutchin; that they participated in the said profits; furnished capital for the conduct of the said business; were in the habit of accepting drafts drawn upon them in the name of

the firm; and, in general, so conducted themselves as to induce the complainants to credit the firm of Jenkins & Cutchin on the faith of their connection with it. That the indebtedness alleged to exist from the said William H. Jenkins and J. F. Cutchin to the said Joel H. Cutchin and C. A. Cutchin, if any such there be, arises on a settlement of their partnership accounts; and is, in great part, composed of an usurious rate of interest contracted to be paid by the said William H. Jenkins and J. F. Cutchin, for the loan or forbearance of money, contrary to the statute, in such case made and provided.

The bill calls for the strictest legal proof of the amount and *bona fide* character of the alleged indebtedness to J. H. Cutchin & Co. and to J. J. Cutchin.

The bill charges the insolvency of the said Jenkins & Cutchin; and that the assets of the said firm consist of the said stock of general merchandise, and certain debts due to the firm, evidenced by their book accounts, notes, bonds, and other evidences of debt.

The bill makes William H. Jenkins, J. F. Cutchin, Joel H. Cutchin and C. A. Cutchin, merchants and partners, trading as Jenkins & Cutchin; the said Joel H. Cutchin and C. A. Cutchin, merchants and partners trading as J. H. Cutchin & Co.; J. J. Cutchin, M. L. T. Davis and B. D. Thomas, merchants and partners trading as M. L. T. Davis & Co.; and W. W. Briggs, sheriff of Southampton county, parties defendant to the suit, and prays for an injunction to prohibit and restrain William H. Jenkins, J. F. Cutchin, Joel H. Cutchin, C. A. Cutchin, J. J. Cutchin, M. L. T. Davis, B. D. Thomas and William H. Briggs, their agents and attorneys, and all other persons, from proceeding to sell, or in any other way disposing of the said stock of dry goods and general merchandise in the store recently occupied by Jenkins & Cutchin in the town of Franklin, Southampton county, Virginia, and from collecting any debts due to the said firm, or disposing of any of the assets of the said firm by any ways or means whatsoever; and prays for the appoint-

ment of a receiver to take charge of the said stock of general
merchandise, and to make sale of the same upon reasonable
credit, after due advertisement, under the decree of the court;
to collect the outstanding indebtedness due to the said Jenkins
& Cutchin; and praying for the payment of the debts due to
complainants by the said Jenkins & Cutchin, out of the pro-
ceeds of the said sale, and for the distribution of the fund
among the *bona fide* creditors of the said Jenkins & Cutchin, to
the exclusion of any debt due to either of the said partners, on
a settlement of their mutual accounts; and for a reference to a
master commissioner, and for general relief.

Upon this bill the judge of the circuit court of Southampton
county awarded an injunction as prayed for, and on the 30th of
June, 1883, appointed a receiver, and directed him to take into
his possession the said stock of general merchandise and all
other assets of Jenkins & Cutchin, and to sell the said stock at
public or private sale, and authorized him to sell the same, as a
whole, privately, for seventy-five per cent. of the cost value
thereof.   The receiver at once gave the required bond, with
security, for $25,000, took possession of the property, and pro-
ceeded to sell the same according to the terms and authority of
the said decree of June 30, 1883.

On the 17th day of July the cause was heard by the judge
on the motion of the defendants to dissolve the injunction, upon
the bill and answers and exhibits and affidavits filed, and gene-
ral replication to the answers, and was argued by counsel,
whereupon the following order was made, viz: "On considera-
tion whereof, the court being of opinion that the cause should
be further proceeded with, and without deciding any of the
principles, doth overrule the said motion, and continue the said
injunction; and all other directions are reserved."

On the 21st day of July, 1883, an appeal was allowed and a
supersedeas awarded by this court to the foregoing order of the
circuit judge of Southampton county, with directions, that,
upon the execution of an appeal bond in the penalty of $5,000,

the stock of goods in the hands of the receiver should be restored to the sheriff, under the executions levied by him upon the same. The bond was given, the stock of goods restored, and the stock was sold by the sheriff under the said executions, realizing about $10,000. The book accounts, notes and other assets, aggregating some $5,000, were not sold by the sheriff.

The case of *Howell & Co. and others* v. *Whitehill & Co. and others,* is exactly similar in all respects, and was argued and submitted along with this case above stated to be decided as one case.

The bills filed in these causes were not pure bills of injunction; they are creditors' bills, seeking to recover debts, and to prevent the insolvent debtor, mercantile firms, from squandering their assets. They charge that the firms of Jenkins & Cutchin, and Howell & Co., were colluding and conspiring with the creditors, in whose favor they had confessed large judgments, to sacrifice their assets, by a forced cash sale, to the detriment and damage of their other creditors. The bills show, on their faces, ample ground for the interlocutory injunctions, and their allegations were sustained by affidavits. The acts of confessing judgments, and placing their assets in the hands of the sheriff for sale, were such acts of insolvency by the debtor firms as entitled their unpreferred creditors to have the aid and intervention of a court of equity to prevent a sacrifice of the property, and to procure a due administration of the fund; and in the cases at bar, it cannot be held that the injunctions were improvidently awarded. The question, and the only question, presented for this court to decide, at this stage of the case, and until the lower court shall have decided and adjudicated some principle in the cause, is, was the action of the circuit court, or judge in vacation, in overruling the motion to dissolve and continuing the injunction till the hearing, erroneous? The orders entered in these causes, expressly and in terms, declare that the judge was of opinion that the cause should be further proceeded with, and, without deciding any of the principles, and reserv-

ing all other directions, overruled the motion, and continued the injunction till the final hearing. The bills of complainant charged fraud, collusion, usury, technical irregularity, and that the judgments confessed were obtained with intent to hinder, delay and defraud creditors; that the debts for which they were confessed are tainted with usury; that the circuit and corporation courts of Norfolk city, had no jurisdiction to render the judgments; that the executions were improperly and unlawfully issued, and were, therefore, null and void; and that there was a combination to sacrifice the assets. These allegations are sustained by the affidavits and surrounding circumstances, so far, at least, as to justify the court in continuing the injunctions for the opportunity of testimony and final hearing of the cause. No time had been allowed for the taking of depositions, and none had been taken, and the causes were not ready for a hearing. The appellees are entitled to time and opportunity to prove the allegations of their bills; and until this opportunity has been given, the questions at issue cannot be adjudicated in the circuit court. No question has been decided in the circuit court; and there is no point or material in the records of these causes upon which this court can base a decision. There are grave issues of fraud, of usury, of partnership, of illegality in the judgments, and of illegality in the executions; upon none of which have the parties been heard. The circuit courts of Southampton and Isle of Wight counties, had jurisdiction to maintain these suits; the acts were done, and apprehended to be done, in these counties, and the suits were properly brought therein. (Code 1873, chapter 175, sec. 4, p. 1126; *Beckley* v. *Palmer*, 11 Gratt. 630.)

The injunction bonds were sufficient in penalty, and conditioned according to law. These creditors were getting no indulgence, they did not ask and could not obtain possession of the property levied on. They merely asked the court of equity to intervene and prevent a sacrifice of the assets of their insolvent debtors, and to hold it until their conflicting claims could

be adjudicated, and to make an equitable distribution of the fund in controversy among those who should be determined to be lawfully entitled; and the court, in the exercise of its fair and full discretion, fully protected the rights and interests of all the parties by requiring adequate injunction bonds to pay the costs and damages, and receiver's bonds to cover the value of the property in controversy. The court properly refused to turn the assets which were the subject of litigation over to the appellants. One of the grounds for granting and continuing the injunctions was that these insolvent merchant debtors and their alleged judgment creditors were sacrificing a large amount of property by a forced cash sale on ten days notice. The very controversy was, who was entitled to the property or the fund, and until this issue could be tried and settled the general creditors had as much right to it as the judgment creditors, and the court properly took and held it in possession till the cases should be decided.

It rests in the sound discretion of the court to dissolve an interlocutory injunction upon the coming in of the answer denying the equities of the bill, or to continue it to a final hearing on the merits, if such course shall seem best calculated to subserve the ends of justice, and to protect the rights of all parties in interest. (High on Injunctions, sections 878–881–2–3.)

"It is to be constantly borne in mind, that the dissolution, like the granting of interlocutory injunctions, is largely a matter of judicial discretion, to be determined by the nature of the particular case under consideration. A dissolution, therefore, does not follow necessarily, and of course, upon the coming in of the answer denying the material allegations of the bill upon which the injunction issued, and the court may, in the exercise of a sound discretion, refuse a dissolution and continue the injunction to the hearing, where the circumstances of the case seem to demand this course. Especially will this course be exercised where fraud is the *gravamen* of the bill, or where it is apparent to the court that a dissolution of the injunction would

result in greater injury and hardships than its continuance to the hearing: or where it is apparent, that by the dissolution, complainant would lose all the benefit which would otherwise accrue to him should he finally succeed in his cause." (High on Inj., sect. 899.)

"So where the case, as presented by the bill, is one which seems to require investigation, and the effect of dissolving the injunction would be to place the property which is the subject of controversy beyond the control of the court in which the action is pending, and would be equivalent to a complete denial of the relief sought by the bill, the injunction will not be dissolved." High on Inj., sec. 900. (*Nelson* v. *Armstrong*, 5 Grat. 354; *Beale* v. *Diggs*, 6 Grat. 591.)

The court was justified in appointing a receiver to convert the assets into money, because the property was expensive to keep and to guard, and was liable to many contingencies of depreciation, ruin and loss; and because it was evident, from the numerous petitions filed by the general creditors, that the mercantile firms were insolvent, making it proper and necessary for a court of equity to administer the assets and to distribute them with regard to the interests of all parties. These causes must be remanded to the circuit courts of Southampton and Isle of Wight counties, respectively, to be further proceeded in; and the appeal and *supersedeas* in each case be dismissed and vacated as having been improvidently awarded.

An order will be made requiring the appellants to deposit the funds arising from the sale of the property in some solvent bank, to the credit of these causes, to await the determination of the issues involved in the merits.

DECREE AFFIRMED.