PORTER v. JEFFERIES.

1. EVIDENCE—WRITTEN INSTRUMENTS.—It is not competent to prove by an attorney who prepared a mortgage—whether he represented both parties or only the mortgagee—that the executors who executed the mortgage then considered the land mortgaged to be the property of their testator, there being no charge of fraud. The mortgage must speak for itself.

2. IBID.—In action to recover on the breach of warranty contained in a mortgage of testator's land executed by the executors under a power in the will, where a portion of this land had been recovered by testator's widow in an action to which all of the parties to this action were parties, testimony as to the widow's title, and as to the disposition of the crops raised on the land, and as to the value of a part of the land purchased by the mortgagee at the foreclosure sale, was either irrelevant to the issues here involved or immaterial.

3. EVIDENCE—HARMLESS ERROR.—Reversible error cannot be imputed to the admission of a question to a witness, even if incompetent, where his answer was not incompetent because a mere repetition of what he had previously testified to without objection.

4. PERSONAL COVENANT BY EXECUTORS.—The covenant of warranty contained

in a mortgage of testator's lands executed by his executors under a power in his will, binds the executors personally.

5. MISTAKE—PLEADINGS—EVIDENCE.—The allegations of this answer were not sufficient to raise the issue of mistake in the execution of the mortgage; and there was, therefore, no error in excluding testimony as to a mistake.

6. IBID.—MORTGAGE.—Where executors execute a mortgage containing their personal covenant, supposing that they are binding only their testator's estate, their mistake is as to the proper construction of a written instrument, against which the Court of Equity will not give relief.

7. ESTOPPEL—ATTORNEYS.—These executors having represented all the land embraced in the mortgage to be the land of their testator, whereas a portion was not, they cannot, when sued for the breach of their personal warranty, claim that the mortgagee is estopped by the representation of his attorney, at the time of the execution of the mortgage, to the effect, that their covenant did not bind them personally; and especially so where such attorney was the attorney for all the parties to the instrument.

8. USURY.—Where a usurious debt was contracted, and then a second debt which was not usurious, and a new note was given for these two debts, so much of this new note as represented the second debt was not usurious.

9. CHARGING JURIES—HARMLESS ERROR.—An erroneous error in a charge furnishes no ground for a new trial where it did not affect the result.

10. USURY—COUNTER-CLAIM FOR PENALTY.—Under the terms of the usury statute, the penalty imposed for receiving usurious interest can be asserted by counter-claim only where the action is to recover the principal sum, and cannot, therefore, be sustained in action for breach of warranty contained in a mortgage given to secure the debt.

11. HARMLESS ERROR.—An alleged error in the charge is immaterial when under a later instruction the jury did that which ignored the alleged error.

Before NORTON, J., Spartanburg, March, 1893.

This was an action, commenced September 20, 1889, by R. C. Oliver, and after his death continued by John A. Porter and others as his executors, against John R. Jefferies and Eber C. Allen. Paragraphs 2, 3, and 6 of the answer were as follows: "2. The defendants admit signing note and mortgage referred to in the complaint, but allege that they signed them purely in capacity of executors of Woodward Allen, deceased, and that they did not mean to, nor did they, bind themselves personally or individually thereby, and that they received no personal benefit therefrom, and said fact was well known to the plaintiff. 3. That the said R. C. Oliver ought not to be allowed to say

that he is damaged by said act of these defendants, knowing, as he does, that the defendants signed said note and mortgage as executors and not as individuals, and being told by plaintiff's attorney in his presence that they assumed no individual liability thereby; and said action is pleaded as an estoppel herein." "6. Defendants further say, that it was not their intention, nor understanding between them and plaintiff, that they should become individually liable on said note and mortgage, but that the converse is true, and that if they are so apparently liable, it is through a mistake, which a Court of Equity will correct."

The grounds of appeal were as follows:

1. That his honor erred in refusing to allow Mr. J. W. Carlisle to answer this question: "Was it not a fact that they considered the land as belonging to Woodward Allen?" 2. That he erred in excluding book Z, page 513 (deed of Elizabeth Moss and Mrs. Woodward Allen to each other). 3. That he erred in refusing to allow E. C. Allen to answer the question: "What was done with the crops that were raised on that place? were they used as estate crops or were they divided out?" 4. That he erred in refusing to allow Allen to answer the question: "What was the land worth that Oliver bought at sale then (at time of sale)?" 5. That he erred in refusing to allow defendants to introduce evidence as to having signed the mortgage under a mistake while acting under legal advice; the ground being that such defence is not alleged in the answer, whereas it is one of the foundation stones of the answer and one of the defences relied upon. 6. In not sustaining defendants' objection to the question to Mr. Carlisle: "State whether or not, if they had said anything to you, or intimated to you that Mrs. Allen claimed any of this land at all, you would have told them that they were not liable personally if they had mortgaged it?" 7. That he erred in charging the jury that the warranty clause in the mortgage was the personal covenant of defendants, which was collateral security to the debt of themselves as executors— an individual liability, as well as liability as executors. 8. That he erred in charging the jury that the allegations of the

answer were not sufficient to entitle defendants to go into the defence that the warranty covenant was given under a mistake, and that any testimony which may have come out, bearing upon that proposition, should be excluded from their consideration, and that that point should be determined adversely to defendants and in favor of plaintiffs. 9. That he erred in charging the jury as follows: "If you believe that Mr. Carlisle, as agent of Mr. Oliver, made such representation that parties were not bound, and accepted the mortgage upon the faith of all the land which is described in it, and if that representation was untrue, that the paper must stand for itself, and the plaintiffs cannot be estopped," and immediately afterwards illustrating his position by a case that had no resemblance or application, thereby greatly misleading them by the hybrid combination. 10. That he erred in charging the jury, that the defendants here would be bound by any representation that they made as to the ownership of the property, and their personal warranty that this was the property of the estate of Allen would bind them as to that warranty, whether they meant to be personally bound or not, if upon the faith of that Mr. Oliver parted with his money." 11. That he erred in charging the jury that the $500 part of the debt would not be tainted with usury, even though the former part of the debt was; whereas, as a matter law, the tainting of part was taint of the whole, and as matter of fact the $500 part was actually as much tainted as any other part. 12. That he erred in charging that defendants' counterclaim for usury was not admissible. 13. That he erred in charging: "The taking of the land under the homestead law would constitute a breach of the bond, to be added to the liabilities of the defendants. For instance, the principal of the debt, the $3,500, the $500, the $900, dower, and the $1,000 homestead, are to be added together, and from that you are to deduct all of the payments that have been made."

*Mr. Stanyarne Wilson*, for appellants.

*Messrs. C. P. Sanders* and *D. E. Hydrick*, contra.

November 18, 1893. The opinion of the court was delivered by

MR. CHIEF JUSTICE MCIVER.    This action was originally commenced by R. C. Oliver, and upon his death continued in the name of his executors, the plaintiffs above named.    The object of the action was to recover damages for the breach of covenants of warranty contained in a certain mortgage, a copy of which is set out in the "Case;" but as we propose to extract therefrom so much of the terms thereof as bear upon one of the points made by this appeal, it is unnecessary to set out the mortgage *in extenso*.    It seems that Woodward Allen, of whose will the defendants are the duly qualified executors, being indebted to Jesse F. and John B. Cleveland in a large sum of money, during his lifetime executed a mortgage on 835 acres of land to secure the payment of said debt; and that after his death the defendants, being executors as aforesaid, desired to pay the Cleveland debt, because it was bearing a high rate of interest, and for this purpose borrowed from R. C. Oliver the sum of $3,500, and extinguished the Cleveland mortgage, giving to said R. C. Oliver a mortgage on the same land covered by the Cleveland mortgage.    Subsequently the defendants procured another loan from said R. C. Oliver, the amount of which, together with the amount then due on the former loan, was embraced in a new note, and secured by a new mortgage on the same land; and it is this new mortgage which contains the covenants, the breach of which constitutes the cause of action in the present case.    So much of this last mentioned mortgage as is pertinent to the questions raised by this appeal reads as follows:

"We, John R. Jefferies and E. C. Allen, executors of the last will and testament of Woodward Allen, deceased, by virtue of the power given to us in said will and testament, of the county and State aforesaid, send greeting: Whereas, we, the said John R. Jefferies and E. C. Allen, executors as aforesaid, in and by a certain note bearing date the twenty-second day of February, A. D. 1884, promise to pay R. C. Oliver or order the sum of three thousand and seven hundred and twenty-five dollars ($3,725), payable on the 1st day of January, 1885, with interest from the 1st of February, 1884, at ten per cent. per annum till paid.    * * *    Now, know all men, that we, the said John R.

Jefferies and E. C. Allen, in consideration of the said debt and
sum of money aforesaid, and for the better securing the pay-
ment thereof to the said R. C. Oliver, according to the terms of
the said note, and also in consideration of the further sum of
three dollars, to us, the said Jefferies and Allen, in hand well
and truly paid by the said R. C. Oliver, * * * we, the said
Jefferies and Allen, executors as aforesaid, have granted, * *
* being the tract on which Mrs. Allen, the widow of the late
Woodward Allen, now resides, containing eight hundred and
thirty-five acres (835), more or less, and being the tract of land
of which the late Woodward Allen, at the time of his death,
was seized in fee. * * * And we do hereby bind ourselves,
our heirs, executors, and administrators, to warrant and forever
defend all and singular the said premises unto the said R. C.
Oliver, his heirs and assigns, from and against us and our heirs,
executors, administrators, and assigns, and all persons lawfully
claiming or to claim the same, or any part thereof." The at-
testing clause of the mortgage is in these words: "Witness our
hands and seals, this 22d day of February, A. D. 1884," and
it is signed as follows: "John R. Jefferies (L. S.), Eber C.
Allen (L. S.), executors of W. Allen, deceased."

The breaches of this covenant of warranty, as assigned in
the complaint, are as follows: 1st. That by proceedings in this
court, to which the defendants as well as the said R. C. Oliver
were parties, it has been adjudged that three hundred and
thirty-five acres of land embraced in the mortgage did not
belong to the said Woodward Allen, but was the individual
property of his widow, Mrs. Harriet Allen, and, therefore,
not liable to the lien of the mortgage. 2d. That in the same
or similar proceedings it has been adjudged that the said widow
is entitled to both dower and homestead in so much of the
mortgaged premises as remained after taking off the said 335
acres, adjudged to be the individual property of Mrs. Allen.
The defendants in their answer set up several defences: 1st.
That of mistake in executing the mortgage. 2d. Estoppel,
arising from the representations made to them at the time of
the execution of the mortgage by the attorney of Oliver. 3d.
Estoppel, arising from a former proceeding to which both Oli-

7—40

ver and these defendants were parties. 4th. That the lands of Woodward Allen, when sold under the mortgage, were bid off by R. C. Oliver at much less than their real value, and he should be required to credit his mortgage with the full value of the land bought by him. 5th. Usury in the note secured by the mortgage. 6th. A counter-claim for double the amount of usurious interest paid on the note secured by the mortgage.

The case came on for trial before his honor, Judge Norton, and a jury, and after his charge the jury found a verdict in favor of the plaintiffs for $603.98, and judgment having been entered, the defendants appeal upon the several grounds set out in the record.

We will first take up those which impute error to the Circuit Judge in his rulings as to the admissibility of testimony. The first ground alleges error in refusing to allow Mr. Carlisle to answer the following question: "Was it not a fact that they [meaning the defendants] considered the land as belonging to Woodward Allen?" On turning to that part of the "Case" where this question was objected to, we find that counsel for defendants explained by saying: "I am asking him as the representative of both parties, if he believed at that time the mortgage was upon the land of Woodward Allen?" Taking the question in either form, it seems to us that there was no error in ruling the question irrelevant. It seems that the parties repaired to the office of Mr. Carlisle, who had been for some time the attorney of Oliver, and there the mortgage was drawn and executed, from the description of the land in the Cleveland mortgage. How Mr. Carlisle could know what the defendants considered as to the ownership of the land, except from what was said at the time, or how what was considered, or what he himself believed, could affect any question raised by this appeal, we are at a loss to conceive. There is no allegation, and certainly no proof, that any fraud was intended by any of the parties, and any previous conversation as to the intention or legal effect of the mortgage was merged in the instrument as it was written; and without any such allegation or proof, the true construction of such instrument must be gathered from the terms in which their intentions were expressed in writing.

The testimony alleged to be erroneously excluded in the second, third, and fourth grounds of appeal was so manifestly irrelevant to any issue raised by the pleadings, or so clearly immaterial, that we do not deem it necessary to dwell upon them. The fifth ground will be more appropriately considered in connection with the eighth, for, as matter of fact, the testimony there referred to was received, though the judge afterwards instructed the jury to disregard it; so that the objection was really more to the charge than to the ruling as to the admissibility of the testimony.

The sixth ground complains of error in permitting plaintiffs to ask Mr. Carlisle the question, whether he would have told the defendants that they were not personally liable on the mortgage, if he had known, or if it had been intimated to him, that Mrs. Allen claimed a part of the land embraced in the mortgage. Even if this question had been incompetent, the answer to it certainly was not incompetent, for his answer was in accordance with what he had said before without objection, viz.: "I would not have taken the mortgage at all." So far as we can perceive, the witness did not then answer the hypothetical question as to whether he would have told the defendants they were not personally liable upon the covenants in the mortgage, if he had known, or if it had been intimated to him, that Mrs. Allen claimed a considerable part of the land covered by the mortgage. If he can be regarded as saying anything upon that subject, it was in reply to a subsequent question, to which no objection was interposed, to wit: "If you did state to them [referring to the defendants] that they were not liable individually, upon what was that based?" To which the reply was: "That they were acting under the will, mortgaging the land belonging to their testator." Indeed, it is manifest from all the testimony upon this point, that both Mr. Carlisle and the defendants, at the time the mortgage was executed, regarded the whole of the land as subject to the lien of the mortgage, which Mr. Carlisle regarded as ample security for the debt, and hence, anything that may have been said as to the personal liability of defendants was said in that view; for, of course, if the value of the mortgaged premises was suf-

ficient to secure the payment of the debt, no personal liability could have been incurred. We think, therefore, that, in any view of the matter, the sixth ground of appeal cannot be sustained.

The seventh ground of appeal, which imputes error to the Circuit Judge in holding that the covenant of warranty in the mortgage was the personal covenant of the defendants, and binding upon them as individuals, need scarcely be considered, for it is admitted by counsel for defendants, that the authorities sustain the view taken by the Circuit Judge; and we need not go further back than the cases of *McDowall* v. *Read*, 28 S. C., 466, and *Moss* v. *Johnson*, 36 *Id.*, 551, to show that such admission was amply justified.

We come, then, to the fifth and eighth grounds of appeal, which raise what seems to be regarded by counsel for appellants the most material questions in the case. The Circuit Judge held that inasmuch as the allegations in the answer were not sufficient to raise the question of mistake on the part of the defendants, in giving such a covenant of warranty as would bind them personally, all the testimony bearing upon that alone should be disregarded by the jury, and that defence must be determined adversely to the defendants. In the argument here, counsel for appellants rely upon paragraphs two, three, and six of the answer, to show that the defence of mistake was sufficiently pleaded; and in justice to the appellants, these paragraphs should be incorporated in the report of this case. It seems to us that the allegations there found are too general in their character to warrant the introduction of evidence to sustain the defence relied on. These allegations practically amount to this: that the defendants in executing the mortgage did not intend to bind themselves personally by the covenant of warranty, and that they were told by Oliver's attorney that they would not be so bound. There is no allegation that any words were omitted which ought to have been inserted, nor any words inserted which ought to have been omitted. Indeed, there is no allegation of any *fact* upon which an issue could be raised, unless it be the fact, that they were "told by plaintiff's attorney in his presence that

they assumed no individual liability thereby," and that fact alone, as we shall see presently, was not sufficient to sustain the defence. It seems to us, therefore, that these paragraphs were demurrable, upon the ground that they did not state facts sufficient to constitute any defence; and if so, then clearly there was no error in excluding testimony as to such allegations. Pom. Rem., § 603. There was no error, therefore, on the part of the Circuit Judge in excluding, from the consideration of the jury, the testimony as to the alleged mistake.

But as it is possible (though we are not to be regarded as so holding) that the defect in the answer might have been cured by amendment, we are not content to rest our judgment upon the ground of defect in the pleading. It is not pretended that there was any fraud or concealment, on the part of either Oliver or his attorney, nor can it be pretended that the mistake relied on was as to any matter of fact; if any, it was a mistake of law, and, what is more, a mere mistake as to the proper construction of a written instrument. Against such a mistake a Court of Equity will not relieve. In 15 Am. & Eng. Enc. of Law, 637, we find the following proposition laid down, and supported by quite an array of authorities: "A mistake on the part of a person executing an instrument as to its legal effect, or that it has an effect different from that intended, cannot avail to avoid that construction of the instrument which the language used and the rules of law as applied thereto require." So in 2 Pom. Eq. Jur., § 843, we find the following: "The rule is well settled that a simple mistake by a party as to the legal effect of an agreement which he executes, or as to the legal result of an act which he performs, is no ground for either defensive or affirmative relief." This doctrine is fully supported by our own cases. *Keitt* v. *Andrews*, 4 Rich. Eq., 349, and *Munro* v. *Long*, 35 S. C., 360. We do not think, therefore, that, even if the mistake here relied upon had been fully made out, it could have availed the defendants as a defence in this action.

The ninth and tenth grounds both relate to the defence of estoppel, and may, therefore, be considered together. We do not think that there is any just foundation for these grounds. The appellants claim that inasmuch as they

executed the mortgage, containing a covenant of warranty, which, as we have seen, bound them personally, the plaintiffs are estopped from enforcing such covenant, because they signed the mortgage under a representation made to them by the attorney of Oliver that they would not be bound personally by such covenant; but they take no account of the fact, that they obtained Oliver's money by a representation that all of the land embraced in the mortgage was subject to the lien thereof, for the land is described in the mortgage as "being the tract of land of which the late Woodward Allen, at the time of his death, was seized in fee." It does not seem to us to be at all in accordance with the principles upon which the doctrine of estoppel rests, to allow the defendants to avail themselves of the benefit of an alleged mistake in the construction and legal effect of the terms of the mortgage, without, at the same time, allowing the plaintiffs the benefit of a misrepresentation (though innocently made) as to the title to the land offered as security for the money which they (defendants) obtained. The plaintiffs cannot be estopped from bringing their action to recover damages for a breach of warranty plainly written in the mortgage, when such breach has been occasioned by the misrepresentation (innocent though it be) made by the defendants, in the mortgage, as to the title to the land warranted to be in Woodward Allen. Indeed, it is a mistake to say that defendants were misled by the statement of *plaintiffs' attorney;* for it is clear, from the undisputed testimony, that Mr. Carlisle was acting for both parties, and the language used by the defendant Jefferies, in reply to the question, when he asked Mr. Carlisle whether they would be responsible as individuals as to both of the mortgages, was: "Yes, that was the general counsel he gave me all the time;" showing very clearly that he regarded Mr. Carlisle as his attorney, as well as the attorney of Oliver, for otherwise he would have had no right to call on Mr. Carlisle for "counsel."

The eleventh ground imputes error to the Circuit Judge in charging that $500, part of the debt, would not be tainted with usury, even though the original debt was so tainted. As we understand, the undisputed testimony in the case

was that the original sum borrowed was $3,500, which it is claimed was tainted with usury, and after that debt had been . running for some two or three years, the defendants borrowed another sum of about $500, to pay the balance on a note due to the bank, and then the two debts were incorporated in a new note, which was secured by the last mortgage; and, as we understand the charge, the jury were instructed that the mere fact that the original note was tainted with usury, would not have the effect of tainting the new loan with usury; and in this we see no error. But, as it seems to us, that the figures show clearly that the verdict of the jury could not have been reached if any interest had been allowed upon any part or either of the debts, the instruction complained of, even if erroneous, could not possibly have affected the result; and, therefore, the error, if there was one, becomes wholly immaterial.

The twelfth ground alleges error in ruling out the counter-claim for double the usurious interest paid. The second section of the act of 1882 (18 Stat., 36,) provides as an additional penalty for receiving usurious interest, a forfeiture of double the sum so received, "to be collected by a separate action, or allowed as a counter-claim to any action brought to recover the principal sum." This being a penalty imposed only by a special statutory provision, can be enforced only in the mode prescribed in the statute; and as it is there declared, "allowed as a counter-claim to any action brought to recover the principal sum," and as this is not an action to recover the principal sum, but, on the contrary, an action to recover damages for the breach of a covenant of warranty, it is quite clear that there was no error in excluding the counter-claim.

The only remaining ground, the thirteenth, claims that there was error in charging the jury that the allowance of a homestead would constitute a breach of the covenant of warranty. While it is quite true that in one portion of his charge, the Circuit Judge did say to the jury that he thought the taking the homestead out of the land would be a breach of the covenant of warranty, yet after a colloquy between himself and counsel as to the homestead in the concluding part

of the charge, the matter of homestead was dropped out, and the jury were practically instructed that if they found that there was usury in the whole transaction, then in order to ascertain what damages the plaintiffs had sustained by reason of the breach of warranty, they should add together the principal sums of the two notes, $3,500 and $510.95, and the amount paid for dower, $963.64, and from the sum thus ascertained, deduct the sum of all the payments made upon the mortgage debt, and the balance would be the damages which the plaintiffs were entitled to recover. This, as we understand the figures, was just what the jury did; and hence the question as to the homestead became wholly immaterial. ·

The judgment of this court is, that the judgment of the Circuit Court be affirmed.