# CHARLESTON.

LIZZIE KESSEL et als. v. CHARLES COHEN et als.

(No. 5991)

Submitted October 12, 1927.   Decided October 18, 1927.

1. INJUNCTION—*Generally, Where Answer Fully Denies Allegations of Bill Supported Only by Verifying Affidavit, Injunction Will be Dissolved, Especially in Absence of Replication.*

   The general rule is that where the answer fully, fairly, plainly, distinctly and positively denies the allegations of a bill on which an injunction has been awarded, and the material allegations of the bill are not supported by proof other than the affidavit verifying the bill, the injunction will be dissolved. If there be no replication to the answer, and the averments thereof on the material facts involved are buttressed by affidavits, a stronger case for dissolution of the injunction on motion is made.   (p. 300.)

   (Injunctions, 32 C. J. § 709.)

2. APPEAL AND ERROR—INJUNCTION—*Dissolution of injunction is Matter of Sound Judicial Discretion; Ruling on Motion to Dissolve Injunction Will Not be Disturbed on Appeal, in Absence of Showing That Trial Court's Discretion Was Not Soundly Exercised.*

   The dissolution of an injunction is a matter of sound judicial discretion, and the appellate court will not disturb the decree of the lower court dissolving or refusing to dissolve, where it appears that the discretion has been soundly exercised, or where the contrary does not appear in the record.   (p. 300.)

   (Appeal and Error, 4 C. J. § 2768; Injunctions, 32 C. J. § 662.)

   (NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Appeal from Circuit Court, Kanawha County.

Suit by Lizzie Kessel and another against Charles Cohen and others for an injunction. From a decree dissolving the injunction, which the Circuit Court affirmed by refusing an appeal and entering an order declaring the decree right, plaintiffs appeal and obtain supersedeas.

*Affirmed.*

*Goshorn & Smith,* for appellants.
*Sam Silverstein,* for appellees.

LIVELY, JUDGE:

Petitioners Lizzie Kessel and R. B. Kessel obtained this appeal and supersedeas from a decree dissolving an injunction in the chancery cause of Lizzie Kessel, et al. v. Charles Cohen, Sol May and Sam Silverstein, trustee, and Hubert May, trustee, in which action petitioners, as plaintiffs, under the provisions of Chapter 96, Sec. 7, Code, sought to restrain defendant Sol May from disposing of certain notes of which the plaintiffs were makers, and to restrain the defendant trustees from proceeding to advertise and sell under two deeds of trust plaintiffs' property which had been given to secure said notes. The common pleas court of Kanawha County granted the injunction prayed for, but later, upon motion, dissolution was decreed. The circuit court affirmed the decree by refusing an appeal and entering an order declaring the decree plainly right.

Plaintiffs in their bill allege that they are owners of certain real estate in Charleston, West Virginia; that they executed notes for the total amount of $24,500.00 payable to bearer, secured by two deeds of trust upon their property; that the loans (represented by the notes), which said deeds of trust were given to secure, were usurious and were made at a greater rate of interest than allowed by law; that defendants Charles Cohen and Sol May colluded and conspired to secure from the complainants the notes and to pay therefor a grossly inadequate price, and that the scheme and plan was for the purpose of hiding the usurious character of the loans; that defendant trustees were about to advertise the property for sale; that complainants were ready and willing to pay any sums of money due at the legal rate of interest; that they were unable to prove the usury charged, and called upon the defendants for discovery under oath. The bill was duly verified.

On April 2nd, 1927, the common pleas court granted complainant a restraining order as prayed for. On April 18th, Sol May, defendant herein, filed his demurrer, and answer

under oath to the bill of complaint, and moved the court to dissolve the injunction awarded against him and the trustees under the deeds of trust, and asked that his answer be treated as his affidavit in support of said motion. The affidavits of Charles Cohen and E. S. Bock were also filed in support of May's answer.

The defendant Sol May in his answer denied that there was any scheme or plan between him and the said Charles Cohen for the unlawful purpose of hiding these alleged usurious loans, and alleged that he did not know of or use any scheme in the procurement of said notes; but that, on the contrary, he purchased said notes for value, before maturity, and without knowledge of any equities or infirmities therein, if any there be; that respondent had no knowledge of any agreements, understandings, negotiations or other relations that did or may have existed between R. H. Kessel and Charles Cohen; that respondent was informed and believed that Charles Cohen was acting for himself in making the sale of certain notes described in the deeds of trust, which notes the said Cohen represented unto the respondent were the property of Cohen; that said notes were endorsed by Cohen without recourse. The respondent further averred that he had been informed that it was not necessary for him to answer the interrogatories in the complainants bill.

The substance of Bock's affidavit is that Kessel applied to his law firm to assist him in raising money to pay indebtedness, and that Kessel was referred by him to Cohen for that purpose; that he heard Cohen suggest to Kessel that the latter execute his negotiable notes to Cohen secured by trust deed on his property, and Cohen would negotiate them in the market for a fixed sum agreed upon by Kessel, and for which service Cohen would exact an attorney's fee, the amount of which affiant did not remember; that later May inquired of him as to the ability of the maker of the notes to pay them, and that Kessel had applied to him later to get an extension of time for payment, from May, saying that he would have the money in a few days to pay them in full, and that he, Kessel, desired affiant and Cohen to have the fee which had been earned in this matter.

Cohen's affidavit contains the facts stated in Bock's affidavit relative to the inception of his employment by Kessel, and in addition thereto, in substance, says that pursuant to the agreement between him and Kessel, he made an abstract of title to the property; that negotiable notes were executed secured by deed-of trust on the property, which notes were to be sold by affiant for a fixed sum (not stated); that after the first notes had been sold, Kessel again wanted more money, and the second note for $4,500.00 was executed under like agreement, being secured by second deed of trust, which note affiant sold to May and disposed of the proceeds as directed by Kessel; that he never represented May as counsel or otherwise at any time; nor did he advise May that he represented Kessel or that any relation or understanding existed between him and Kessel; that on numerous occasions after this suit was instituted Kessel had stated to him that the sale was *bona fide* and for a fair price, and the notes were purchased by May in due course for value; and that the suit was for the purpose of delay in order to give him (Kessel) more time to pay off the notes.

Upon the filing of Sol May's answer and the affidavits in support thereof, the lower court upon the consideration of the same, dissolved the injunction granted complainants. The court found that from the answer and affidavit of Sol May and the affidavits of Bock and Cohen, respectively, that there had been no scheme, plan or design between Sol May and plaintiffs for the purpose of hiding or concealing usurious loans, and that May was a *bona fide* purchaser for value before maturity of the notes described in the bill of complaint; that the notes were purchased by Sol May from the defendant Charles Cohen; and that Charles Cohen in making the sale of said notes was acting as an agent and broker for the plaintiffs.

The points of error relied upon for reversal are: First, it was error for the lower court to sustain the motion made by the defendant Sol May to dissolve the injunction which had therefore been awarded to the plaintiffs in this cause; second, it was error to dissolve the injunction instead of continuing it in force and effect pending said suit.

It is the contention of counsel for appellants that the lower court abused its discretion in dissolving the injunction, because the answer filed as a basis of the motion to dissolve the injunction did not answer the interrogatories upon which the plaintiffs depended to prove the truth of their allegations as to usury. It is further contended that after the bill of complaint was filed, and the injunction herein awarded, under the terms and authority of Sec. 7, Chapter 96, of the Code, it must be maintained in full force and effect until the issues have been fought out and the cause determined. Section 7 of Chapter 96 of the Code is as follows: "Any borrower of money or other thing may exhibit a bill in equity against the lender, and compel him to discover upon oath the money or thing really lent, and all bargains, contracts, or shifts relative to such loan, and the interest or consideration of the same; and if it appear that more than lawful interest was reserved, the lender shall recover his principal money or other thing with six per cent. interest only, but shall recover no costs. If property has been conveyed to secure the payment of the debt, and a sale thereof is about to be made, or is apprehended, an injunction may be awarded to prevent such sale pending the suit."

On the other hand, counsel for appellees contends that the decree of the trial court should be sustained because the answer of Sol May denied every material allegation of the bill as to the usury claimed to have existed in said notes, which answer was supported by the affidavits of Bock and Cohen, and that as the complainants did not offer or request that they be permitted to offer proof in support of their bill of complaint, and as the court only base its decision on the pleadings and affidavits filed in support thereof, it had ruled correctly in dissolving the injunction.

The object of the bill is to purge the transaction of usury, and as incidental thereto to preserve from sale the property pledged as security for the notes, until the issue was finally determined. The refusal of the trial chancellor to preserve the property is the error alleged. Did the trial court abuse its discretion in dissolving the injunction? It is quite universally held that an injunction will be dissolved on motion

to dissolve upon bill and answer sworn to, where the answer fully, fairly, plainly, distinctly and positively denies the allegations of the bill on which the injunction was granted, and the material allegations of the bill are not supported by proof other than the affidavit verifying the truth of the allegations therein contained. *Rossett* v. *Greer,* 3 W. Va. 1; *Arbuckle* v. *McClanahan,* 6 W. Va. 101; *Wise* v. *Lamb,* 9 Grat. 294; and numerous cases cited in 7 Ency. Dig. Va. & W. Va. Reports, p. 636. The dissolution of injunctions is largely a matter of judicial discretion, and the appellate court will not disturb the action of the lower court, either in dissolving or refusing to dissolve, where it appears that the discretion has been soundly exercised, or where the contrary does not appear in the record. *Jenkins* v. *Waller,* 80 Va. 668; *Ingles* v. *Straus,* 91 Va. 209. It will be well to bear these fundamental principles in mind in our consideration of this case.

The averments of the bill as to fraud and usury are, to say the least, rather vague and indefinite. Webb on Usury, Secs. 355 and 356. And this is especially true when the provisions of Chap. 96, Sec. 7, Code, in regard to discovery, are construed in the light of present day conditions. This statute was passed by the Virginia Legislature in 1796, when the debtor was not a competent witness to prove the usury, and was designed to remedy that situation by calling upon defendant for discovery. *Logan* v. *Ballard,* 61 W. Va. 526. But granting that the averments of the bill state a case warranting the issuance of the injunction in the first instance, yet the answer of defendant May, supplemented by affidavits, denies the material allegations of complainants' bill, and sets up the fact that he was a *bona fide* purchaser for value, without notice of any defects in the notes. There was no replication to this answer, and therefore it is to be taken as true in every part thereof, including the facts stated which are not responsive to the bill. *Bierne* v. *Ray,* 37 W. Va. 571. The controlling question then presented is, whether under the averments of respondent May's answer and affidavits filed in support thereof, the defendant May was a *bona fide* purchaser of the note in question. If he was, then the

trial chancellor has not abused his discretion in the dissolution of the injunction. *Watterson* v. *Miller*, 42 W. Va. 108; *Welton* v. *Peerce*, 5 W. Va. 437; *Gantt* v. *Grindall*, 49 Md. 310; *Rossett* v. *Greer, supra; Jenkins* v. *Waller, supra*.

The basis of defendant May's defense as set forth in his answer (he was the only defendant to file an answer), is that he was a *bona fide* purchaser without notice of the existence of any prior agreement between Cohen and Kessel in regard to the notes; that he purchased the notes before maturity, in the regular course of business, for value, without knowledge of the purpose for which they were issued; that Cohen had claimed to be the owner of the notes, and he, May, did not know that Cohen was acting as agent of Kessel. It may be that respondent purchased these notes at a considerable discount from their face value, but as a purchaser of accommodation paper valid in its inception, in good faith and without notice of its character, he would be protected in his purchase. The transaction as to him was a purchase and not a loan. While there is a sharp division of authority on this question, we believe the better view sanctions the protection of a *bona fide* purchaser under such circumstances. The courts of Illinois, Iowa, Kansas, Louisiana, Minnesota, Pennsylvania, Tennessee, Virginia and Wisconsin are among those adhering to this doctrine. In *Otto* v. *Durege*, 14 Wis. 571, it appeared that the plaintiff had executed his note and given it to the payee to sell for him. It was sold to the defendant's agent at a discount. The trial court found that Winkler, the payee, "having paid no consideration for said note, could not maintain an action upon same against the plaintiffs, and that said Durege was the first person that paid or parted with any consideration therefor, and he having reserved upon same a greater sum than legal interest upon the amount of money advanced, for the time the note had to run, the transaction was usurious and the note void, and the said judgment entered on said note was illegal and void." The appellate court, in reversing the judgment, said, in part:

"The judge found that Von Deutsch, the agent of defendant Durege, purchased the note in ques-

tion without knowledge of its origin or the purpose for which it was executed. The court is of the opinion on these facts, that the transaction was not usurious, and that the defendant is entitled to recover from the plaintiffs the principal and interest specified in the note. * * * Negotiable paper, like any other property, may be bought and sold below its real value and for less than its face, without imputation of usury, although the purchaser thereby obtains much more than legal interest for the use of his money. The penalties and prohibitions of the statute are aimed at the receiving or contracting to receive a greater rate of interest than that prescribed by it upon the loan or forebearance of money, or other things, and do not apply to the sale of a note or any other vendible commodity, which, when in good faith intended as such may be sold and transferred for such price as may be fixed by the agreement of the parties. The only limitation upon this principle, if it may be properly so called, is that made necessary for the purpose of giving effect to the spirit and intent of the law against usury, by preventing the parties from resorting to the form of a sale as a cloak or cover for what is in reality a usurious loan. In such cases the law looks behind the shifts and devices of the parties, and according to the fact, declares the transaction to be a loan and not a sale. But in order to do this it must appear that the supposed purchaser had notice, either actual or derivable from the circumstances of the case, of the trick or device resorted to, and therefore consented to it; otherwise he will not be divested of the character and rights of a purchaser. * * * Having advanced his money in good faith as a purchaser, the law will not permit the secret intentions and motives of the other parties to transform it into a loan; for that would be to make the unlawful purposes of the guilty instruments for the destruction of the innocent. The law against usury is penal in its nature, and reason and justice dictate that the forfeitures imposed by it ought not to be visited upon those who are innocent of any intentional violation of its provisions. The principle that a note infected with usury is as void in the hands of a subsequent *bona fide* holder,

as of a person having full notice, does not affect a case like this. The note in question was not invalid in the hands of Winkler (payee) on the ground of usury, but for want of a sufficient consideration. * * * If Winkler had sold the note for the full amount for which it was given, and paid over the money to the plaintiff Otto, no one would have thought of questioning the transaction on the ground of usury. This proves that there was no usury prior to the sale, and as it cannot, for the reason above given, be made out from what happened at that time, it follows that the objection is not sustained. If Von Deutsch (agent of defendant) had known the character of the paper, and that it was made in order to give efficacy to a usurious contract, or if the transaction had been attended by circumstances which should reasonably have aroused his suspicions, and put him upon inquiry, the question would have been different.''

In *Taylor* v. *Bruce*, Gilmer, (Va.) 42, the makers of an accommodation note indorsed in blank, with the names of other accommodation indorsers upon it, placed the same in the hands of a broker for sale. The note was purchased at a usurious discount. The majority of the court held that in the absence of proof that the purchaser knew of the invalidity of the paper as between the parties, and of the agency of the broker, the note was free of usury. In *Mosley* v. *Brown*, 76 Va. 419, it appeared that notes made by the plaintiff for the purpose of raising money were indorsed by him in blank, and put into the hands of a broker for sale on the maker's account. The notes were purchased from the broker without any knowledge on the part of the purchaser of the purpose for which they were made. The court held the transaction was a valid sale, and not a usurious loan. In *Whitworth* v. *Adams*, 5 Rand. (Va.), 333, an accommodation note, given to the payees for their accommodation, was indorsed by them, and placed in the hands of a broker for sale, and was sold by him at a usurious discount. A majority of the court held that such purchase was not usurious, the purchaser not knowing that it was accommodation paper or for whose benefit it was sold. See also *Bailey* v. *Hill*, 77 Va. 492.

In *Dickerman* v. *Day,* 31 Iowa 444, the court said: "To constitute the offense of usury, therefore, there must be a contract for the payment of more than legal interest for the use of money. In other words, there must be a loan in some form or in fact. But in the case of the sale and purchase in good faith of notes or bills, this element of a usurious agreement is wanting; unless there was usury in the inception of the note or bill, in which case its taint affects the indorsee to the same extent as it would the original payee. * * * Where a promissory note is regularly and in good faith sold as business paper, and taken by a purchaser without any knowledge that it is accommodation paper, being free from usury in its inception, the substance of the transaction is a transfer of the property; a sale and nothing more than a sale. No money is loaned or borrowed, or foreborne in any way whatever, and the price or sum paid by the purchaser has nothing whatever to do with the question as to one of usury. Such a transaction cannot, therefore, be usurious with any accuracy of interpretation. * * * We unite, therefore, in holding that the defense of usury is not available in an action against the accommodation maker of a promissory note, by a purchaser in good faith from the payee at a greater discount than legal interest, taken without any knowledge of the character of the paper. See also *Holmes* v. *State Bank,* 53 Minn. 350, 55 N. W. 555; *Ramsey* v. *Clark,* 4 Humph. (Tenn.) 244.

We are not unmindful of our decision in the case of *Eskridge* v. *Thomas,* 79 W. Va. 322, in which it was held that a contract declared by statute to be void, "because it in part is usurious, is as to such usury a nullity and, although negotiable in form, no currency in the market and no innocence or ignorance on the part of the holder can impart validity to it." But as was pointed out in *Otto* v. *Durege, supra,* the principle that a note infected with usury is as void in the hands of a subsequent *bona fide* holder, as in the case of a person having full notice, does not apply to a case like the instant one, because the note in question was not invalid in the hands of Cohen by reason of usury, but for want of sufficient consideration. If the note in the instant case had

been usurious in its inception the rule laid down in *Eskridge* v *Thomas, supra,* would be applicable.

It sufficiently appears from defendant May's answer, to which there was no replication, and consequently the averments of the fact of which must be taken to be true, *Bierne* v. *Ray,* 37 W. Va. 571, that May purchased the notes in question for value before maturity without notice of any defect which would impair their validity, with the understanding and belief that they were the property of Cohen, and without any knowledge that they were accommodation paper given to Cohen by Kessel, the maker, for the purpose of raising money for the latter. As far as May was concerned, as now shown by the pleadings and affidavits, the transaction was a sale, and in the absence of any circumstances charging him with notice of the true character of the relation or agreement between Kessel and Cohen he is protected in his purchase.

It being determined in this stage of the case that May was a *bona fide* purchaser of the notes, it becomes apparent that he was under no duty to answer the interrogatories propounded by Kessel, because he set up a defense which was, as to him, a bar to any charge of usury. *Webster* v. *Couch,* 6 Rand. (Va.) 519.

It is the contention of counsel for appellants that under the statute, Chapter 96, Section 7, the court having once granted the injunction as prayed for, should not have dissolved it upon the filing of the answer and affidavits, but should have retained the injunction until the issues had been fought out and the cause determined. Considerable stress is laid upon the words contained in the statute, "an injunction may be awarded to prevent such sale *pending the suit*". We are unable to perceive any merit in this contention. Defendant's answer denied the material allegations of the bill and there was no replication thereto or request to be given an opportunity to take proof in support of the bill. "It is a general rule in equity that an injunction will be dissolved at the hearing of the motion to dissolve it on bill and answer sworn to, if the answer fully, fairly, plainly, distinctly and positively denies the allegations in the bill on which the injunction was granted, and the material allegations of the

bill are not supported by proof other than the affidavits verifying the truth of its allegations." *Hayzlett* v. *McMillan,* 11 W. Va. 464. We do not believe that the legislature intended to make an exception to the general rule in the case of injunctions granted under the provisions of Chapter 96, Sec. 7, and take away from the trial chancellor the exercise of his discretion in dissolving injunctions which have been granted pending the determination of a cause. Our decisions have not so interpreted the statute. In *Watterson* v. *Miller,* 42 W. Va. 108, it was held, "In case of a pure injunction to restrain a trustee from selling land under a deed of trust to secure a debt, on the ground of usury, where there appears that there is no usury in the deed the injunction should be dissolved and bill dismissed, so the creditor may enforce his right under the trust, no other creditors being interested in the case." While the instant case was not a suit for pure injunction, because it was in part a bill for discovery, yet the nature of defendant May's answer was such that that part of the bill praying for discovery was not applicable to him, and consequently as to May the bill partook of the character of a bill of pure injunction. The defense set up in his answer freed the transaction of usury in so far as he was concerned, and therefore, under the rule laid down in the *Watterson* case, the injunction was properly dissolved. And in *Wood* v. *Discount Corp.,* 99 W. Va. 117, 122, there is a dictum which would seem to approve such a dissolution. It was there said: "It may be true that where the answer denies all of the material allegations on which the injunction is founded, and there is no proof of such allegations in addition to the affidavit of the bill, the injunction will be dissolved on the hearing. But here the answer does not deny plaintiff's right to relief. It in effect admits usury, and that plaintiff does not owe the principal sum named in the note. No allegation of the bill is denied except the amount of the original debt; and defendant attempts to fix its claim in a sum different from that alleged by the plaintiff." We are not unmindful of the principle enunciated in *Meyer* v. *Meyer,* 60 W. Va. 473, and kindred cases, to the effect that "where it appears from a consideration of the pleadings and affidavits

or proofs, if any, together with the circumstances of the case, that there is a strong presumption or a strong probability of the existence of plaintiff's equity, it is error to dissolve an ancillary injunction awarded to preserve the status quo of the subject matter of the litigation, in advance of a hearing on the merits; and that the exception to the general rule applies with peculiar force where no great hardship can come to the defendant by continuing the injunction, and great hardship will come to the plaintiff by its dissolution if his equity is finally established.'' The trial chancellor has impliedly ruled that the instant case does not come within such exception, and we are unable to see that he has abused his discretion in this regard.

The decree will be affirmed.

*Affirmed.*