LACE HALL *et al. v.* MORTGAGE SECURITY CORPORATION OF AMERICA *et al.*

(No. 8400)

Submitted April 27, 1937. Decided June 22, 1937.

KENNA, PRESIDENT, dissenting in part.

*R. Paul Holland, T. C. Townsend* and *E. S. Bock,* for appellants.

*Brown, Jackson & Knight* and *Price, Smith & Spilman,* for appellees Union Trust Co. of Maryland *et al.*

*John N. Charnock,* for appellee Mortgage Security Corporation of America.

*Staige Davis* and *Frank Lively,* amici curiae.

RILEY, JUDGE:

This is a suit in equity of Lace Hall and Lilly Hall, his wife, against Mortgage Security Corporation of America, a corporation, Union Trust Company of Maryland, a corporation, trustee, Kanawha Banking & Trust Company, a corporation, trustee, and the unknown holders, if any, of the notes described in a certain deed of trust made by plaintiffs to defendant trustees. Its purpose is to enjoin an apprehended sale of real estate under said

deed of trust; to adjudicate the correct balance owing upon the notes secured thereby; and to purge the loan of alleged usurious charges. From a decree which, among other things, dismissed the bill of complaint as to the holders of six outstanding six per cent "Real Estate Trust Deed Notes," the plaintiffs appeal.

Lace Hall, the owner of certain unimproved real estate in the City of Logan, applied to Williams-Redden & Company, of Charleston, for a loan to cover the cost of the construction of an apartment house thereon. The said loan was to be effective as of completion date. Upon the application (which was made on forms prepared by Mortgage Security Corporation of America) he agreed to pay certain charges out of the proceeds of the requested loan, which loan was to be evidenced by a series of first lien six per cent deed of trust notes, and to execute a second and subordinate lien series of non-interest bearing notes to cover certain additional items. The application, which provided for the purchase of the proposed notes by the Mortgage Security Corporation of America, was forwarded to said corporation by Williams-Redden & Company. Upon notification of the commitment, Hall proceeded to make the proposed improvements.

On September 15, 1925, the apartment having been completed, Lace Hall and Lilly Hall, in accordance with the plan theretofore agreed upon, executed a deed of trust to Union Trust Company of Maryland (Baltimore, Maryland) and Kanawha Banking & Trust Company (Charleston, West Virginia), trustees, on the property, to secure the holder or holders of the two series of notes, heretofore mentioned, bearing even date. The first series was made up of promissory, negotiable six per cent notes, numbered consecutively from one to sixteen, inclusive, aggregating the sum of $10,000.00, the first note falling due two years after date, i. e., September 15, 1927. Each of the notes in this series was executed on special registered forms, resembling bonds and other marketable securities, prepared by the lender, and carried interest coupon notes, falling due every six months. The

principal notes of this series, as well as each of the attached interest coupon notes, were signed by Lace Hall and Lilly Hall, and were made payable to bearer "in gold coin of the United States of America, of the present weight and fineness," at the office of the lender, or Union Trust Company of Maryland. The second and subordinate lien series was composed of seven non-interest bearing notes (aggregating $1,610.00) payable to bearer, at offices of the lender, at three months' intervals, the first falling due on December 15, 1925, and the last on June 15, 1927. The purpose of this second series, which was retained by the lender, was, according to the terms of the application, to cover (a) amounts charged by the National Surety Company and the lender corporation for their guarantees of the sixteen principal notes; (b) the trustees' fees; and (c) the payment of all other costs and expenses incurred by the lender corporation in connection with the loan.

The trust deed provided for monthly payments of $130.00 for one hundred twenty months to one of the trustees, to be applied to the payment of principal and interest on the notes of the first, and principal on the second series, as the same came due.

At the time the foregoing notes and deed of trust were executed, Hall and wife signed an estoppel certificate, in which it is stated: "The undersigned having been requested to execute this instrument, in order that it may be exhibited to prospective purchasers of the notes or bonds evidencing said debt to induce a purchase of the same do hereby represent and certify that there are no defenses available to the undersigned or any of them against the payment of said notes or bonds, nor any offsets between the undersigned and ————————, and that the instrument securing said notes or bonds is truly a first lien upon the real estate conveyed thereby."

Deductions were made out of the proceeds of the loan of $10,000.00 in accordance with the agreement in the application, for a survey of the property, attorney's fee for examining and perfecting title, appraisal fee, recording fees, premium on title insurance, expense of

policy of title insurance, and services of Williams-Redden & Company in procuring the loan. It was stipulated of record that these were valid and proper charges.

The first series of notes, upon being turned over to the lender corporation, was guaranteed by it and National Surety Company, and originally delivered to Union Trust Company of Maryland, trustee, under a collateral agreement as collateral constituting security for certain bonds issued by the lender corporation. Later, other collateral was substituted and eleven of the sixteen notes withdrawn and sold by the lender corporation to various purchasers and investors through investment dealers or brokers, at face value.

The plaintiffs made eighty-seven of the one hundred twenty payments, the eighty-seventh one in December, 1932. On March 15, 1933, they failed to pay the semiannual interest installment, and have since failed to pay either principal or interest. Becoming apprehensive that the property covered by the trust deed would be sold under the provisions thereof, they brought this suit.

Some time between Hall's default and the bringing of this suit (the process of which was returnable to August Rules, 1933), the Mortgage Security Corporation of America and the National Surety Company became insolvent and were placed in the hands of a receiver and the Insurance Commissioner of the State of New York, respectively, and their guarantees became of little, if any, value.

The circuit court decreed that the amount of $1,610.00, represented by the second series of notes, except as to three items totalling $302.75, i. e., $284.75 paid by the National Surety Company for guaranteeing, and $10.00 and $8.00, paid the Kanawha Banking & Trust Company, trustee, and the Union Trust Company of Maryland, trustee, respectively, for certifying the principal notes, represented usurious charges on behalf of the Mortgage Security Corporation, and entered judgment against the latter for the $1,307.25 which represented the usury, together with interest, $699.41, making an aggregate of $2,006.66. It also decreed that all of the

first series noteholders (Mortgage Security Corporation of America not being one of them) were innocent holders of such notes in due course of business; that because of the circumstances alleged and established by such defendants, the plaintiffs are barred of their right to assert usury against such noteholders, and that, accordingly, as to such noteholders, the plaintiffs' bill be dismissed. In arriving at the balance owing by the plaintiffs, to the defendant noteholders, the court computed interest as if payments of six times $130.00, or $780.00, had been made each period of six months.

On appeal, it was urged on behalf of the Mortgage Security Corporation of America, that the plaintiffs dealt with it as a broker and underwriter, and that the charges for the services represented by the subordinate or second series of notes were reasonable. Whether reasonable or not, the chancellor's finding that said charges were usurious is amply supported by the evidence. The Mortgage Security Corporation, in the first instance, advanced all of the money embraced in the loan secured by the deed of trust. At the time the loan was negotiated, this company was the real party in interest. It was nothing more or less than a usurious lender. In this jurisdiction, any premium, profit, bonus or charge exacted or required by the lender in excess of the money actually loaned, with interest at the legal rate, is usurious. *Janes* v. *Felton*, 99 W. Va. 407, 129 S. E. 482; 47 A. L. R. 58 n; *Miller* v. *Prudential Banking & Trust Co.*, 63 W. Va. 107, 59 S. E. 977; *Watkins* v. *Taylor*, 2 Munf. 424, 5 Am. Dec. 486.

But, say defendants' counsel, the subordinate series of notes is separate and apart from the first series, a number of the notes of which were negotiated to the defendant noteholders; that said noteholders are *bona fide* purchasers for value; and that there is nothing in the deed of trust which would put them upon notice that the contract was tainted with usury. The answer to this contention is found in the facts of the case. There was only one consideration for the two series of notes, namely, the loan of $10,000.00; and they were secured by the same

deed of trust. Hence, so long as the notes remained in the hands of the lender the whole transaction, including each and every note, was, under law, tainted with usury. The plaintiffs, having paid the usurious notes ordinarily would have a right to have those payments credited upon the notes of the first series. *Davisson* v. *Smith,* 60 W. Va. 413, 55 S. E. 466; *Reger* v. *O'Neal,* 33 W. Va. 159, 10 S. E. 375, 6 L. R. A. 427. In point 3, syllabus, *Davisson* v. *Smith, supra,* this court held: "In the enforcement of the statutes for the suppression of usury, courts do not disturb, overthrow or annul contracts to an extent beyond the necessity of the case; but there is no restraint upon their power to treat principal and collateral transactions, entered into with intent to evade the law against usury, as a single transaction, when the enforcement of the statute, liberally construed, renders such action necessary."

Many authorities were cited by defendants' counsel for the proposition that the obligation is severable, the usurious part being represented by the subordinate series of notes and the legal part being represented by the first series of notes. *Bowers* v. *Douglass,* 2 Head (39 Tenn.), 376; *Hatcher* v. *Union Trust Company et al.,* 174 Minn. 241, 219 N. W. 76; *Jackson* v. *Shawl,* 29 Cal. 267; *Miller* v. *Reid,* 2 Bailey (S. C.) 345; *Porter* v. *Jefferies,* 40 S. C. 92, 18 S. E. 229; and other authorities. However, these authorities do not apply to the instant case. Here, there was a single transaction, the underlying purpose of which was to obtain for the Halls a loan in the amount of $10,000.00. We must not overlook the fact that the usury statute is based upon a public policy to protect distressed debtors from usurious lenders. This statute is necessarily harsh. In the absence of peculiar circumstances giving rise to the invocation of equity, it does or necessarily must override all technical situations. Clearly, under the circumstances of the instant case and the general policy of the statute, the whole transaction, including both series of notes, was tainted with usury.

It is contended, however, that the notes of the first series, remaining unpaid, are now in the hands of *bona fide* purchasers for value. There is substantial authority

in the United States supporting the proposition that, under the negotiable instruments law, the defense of usury will not prevail as against a *bona fide* purchaser of a negotiable note, where the statute, such as Code 47-6-6, does not make the usurious contract void in its entirety, but only in respect of the usurious interest. *Baker* v. *Butcher*, 106 Cal. App. 358, 289 P. 236; *Brown* v. *Guaranty Mortgage Co.*, 220 Cal. 532, 31 P. (2d) 788; *Whipp* v. *Glueck*, 61 App. D. C. 118, 58 F. (2d) 523; *Vogler* v. *Manson*, 200 Ala. 351, 76 So. 117; *Wood* v. *Babbitt*, 149 F. 818. However, it is settled law in this jurisdiction that the taint of usury will follow notes into the hands of purchasers for value without actual notice. *Artrip* v. *Peters*, 114 W. Va. 819, 174 S. E. 524; *Eskridge* v. *Thomas*, 79 W. Va. 322, 91 S. E. 7, L. R. A. 1918 C, 769; *Kessel* v. *Cohen*, 104 W. Va. 296, 140 S. E. 15. See also *Twentieth St. Bank* v. *Jacobs*, 74 W. Va. 525, 82 S. E. 320, Ann Cas. 1917D, 695, as to negotiable notes growing out of gaming transactions.

Are the noteholders estopped by the so-called "estoppel agreement"? It does not appear that the purchasers holding the notes eleven to sixteen, inclusive, except possibly the Union Trust Company, trustee, had any knowledge of this agreement. The notes themselves did not make any reference to such waiver or agreement. Be that as it may, if effect is given to such an agreement, made contemporaneously with the execution of the deed of trust and the two series of notes, there would result a practical nullification of our usury statute. This statute, based as it is upon public policy, stands over and above the agreement of the parties. The contract in question being usurious in the first instance, cannot be validated either by ratification or estoppel. *Janes* v. *Felton, supra; Norton* v. *Nathanson*, 85 N. J. Eq. 409, 97 A. 166.

The defense of laches has been injected into this case by defendants' counsel. Under Code, 47-6-6, when the payee of an instrument or his assignee which provides for interest more than the lawful rate seeks to enforce payment thereof, he is liable to be confronted with the defense of usury. In such case, should such payee or as-

signee procrastinate in attempting to enforce payment, the debtor is not at fault for the delay. The latter need not move until sued. If such debtor proves usury, the court will invoke the statute, decreeing the obligation void to the extent that the same is usurious. In the instant case, however, the plaintiffs (debtors) have proceeded in a court of equity to have the debt relieved of usury after a delay which has permitted the rights of innocent parties to become attached. Had they proceeded before payment of the first note of the second series, or at any time prior to the insolvency of the guarantors, the defendant noteholders would have been fully protected. Likewise the assertion of their claim prior to the payment of the first note of the first series, assuming that the guarantors were then insolvent, the burden of the usurious portion of the debt would have been born by the holders of the sixteen notes, and not by holders of notes 11, 12, 13, 14, 15 and 16, as is the case here. Carrying the illustration a little further, if the debtors had delayed the present suit for an additional one and one-half years, the usurious portion of the debt would have off-set the principal of the notes 14, 15 and 16, the only notes not then due. With full knowledge of the usury, they have brought about by their delay a situation which, if they prevail in this suit, will result to the detriment of the innocent defendant noteholders.

In *Davisson* v. *Smith, supra,* upon a bill in chancery, relief was granted a debtor against his creditors who had required him to convey to them a certain oil and gas interest in assurance of a debt in addition to a note bearing the legal rate of interest. Before the suit was brought, the grantees made an oil and gas lease to an operating company. Upon the trial, no claim seemed to have been asserted against the lessee. However, in the opinion the court stated that "laches would no doubt bar relief" as between the plaintiff and the lessee.

In *Societe Fonceire et Agricole des Etats Unis* v. *Milliken,* 135 U. S. 304, 34 L. Ed. 208, 10 Sup. Ct. 823, the Supreme Court of the United States recognized that the doctrine of laches was applicable in a suit charging

usury. Syllabus five of the first-mentioned case reads: "A delay of two years in commencing proceedings to set aside a judgment for usury is laches, and is fatal." And in *Lake* v. *Brown,* 116 Ill. 83, 4 N. E. 773, a claim against usury was likewise barred by delay. True, in these cases, the plaintiff permitted the property securing the usurious debt to be sold to innocent purchasers. The sale of the property to innocent parties, whose rights had intervened by reason of the delay, was a deciding factor. In the instant case, there has been no sale under the deed of trust, but by a delay beyond the control of the defendant note-holders, their investments, made with all good faith and innocence, are now sought to be jeopardized.

Because the usury statute is based upon public policy, necessarily it is arbitrary and should not be set aside haphazardly or because of sympathy. Mere delay would not prompt us to do so, for laches is a delay in the assertion of a right which works disadvantage to another. *Carter* v. *Price,* 85 W. Va. 744, 102 S. E. 685; *Camden* v. *Fink Coal & Coke Co.,* 106 W. Va. 312, 145 S. E. 575, 61 A. L. R. 584; *Engel* v. *South Penn Oil Company,* 106 W. Va. 339, 146 S. E. 385; *Jarrett* v. *Bank,* 112 W .Va. 254, 164 S. E. 180; *Galliher* v. *Cadwell,* 145 U. S. 368, 36 L. Ed. 738, 12 Sup. Ct. 873. Usury statutes are solely impliments for defense. They are nothing more nor less than a shield to protect debtors against greedy and avaricious creditors. Such statutes are not "designed as weapons of offense, by which the borrower shall be enabled to practice what is, in its effect, at least a fraud upon his creditor." *Munford* v. *McVeigh's Admr.,* 92 Va. 446, 23 S. E. 857. For us to hold that under no condition is this court able to invoke the doctrine of laches against the defense of usury would throw open the door for fraud. Any effort to evade the usury statute should be scrutinized carefully by the courts; but under no conditions should a court of equity tie its hands, even in the face of such a statute, based as it is upon public policy, when to do so would open the door to fraud, or gross inequities. If the usurious notes had been equal in the amount to the first series notes, and the latter sold to an innocent party, they

would have been worthless under plaintiffs' theory if the debtor had delayed until the usurious notes had been paid. True, the usury statute is based upon a public policy. Likewise upon a public policy is based the right of this court to prevent its invocation under circumstances which will work hardship and injustice upon innocent persons when such hardship could have been avoided without impairing in the least the debtors' right. The difficulty in which the plaintiffs find themselves is one which has come about only by their own delay. They have been guilty of laches to such extent that they are precluded from relief in this suit.

The trial chancellor calculated the interest semi-annually. Plaintiffs claim that the same should have been calculated whenever a payment was made, that is, monthly. In support of this proposition, they cite *Hurst* v. *Hite*, 20 W. Va. 183. This case, however, recognizes an exception where the debtor at the time of the payment, or before, as in the instant case, has directed otherwise. Here the repayment plan was based on a semi-annual collection of interest and the monthly payments of $130.00 each were to be placed in the hands of the trustees, to be applied, at the proper time, to the principal and interest on such basis. In view of this arrangement between the parties at the time the loan was made, we must uphold the finding of the trial chancellor on this point.

For the foregoing reasons, we are of the opinion that the trial chancellor did not err in dismissing plaintiffs' bill of complaint. Therefore, the final decree complained of is affirmed.

*Affirmed.*

KENNA PRESIDENT, dissenting in part:

Regardless of other considerations, I am of the belief that our statute precludes the application of the doctrine of laches in this case. The question of usury was raised by the borrower at a time when a part of the usurious debt was unpaid by bringing a suit to enjoin sale under a trust deed made by the borrower to secure that debt. I think that the statute clearly authorizes such a suit to

be brought by the borrower at any time before full payment of the usurious debt.

Approaching the problem by indirection, I think there could be very little doubt but that if the position of the parties were reversed and the noteholders were suing the borrower to recover the balance of the usurious debt, the borrower could interpose the defense of usury without regard to limitation or laches. Code 47-6-7, among other things, provides (emphasis supplied):

> "*Any defendant* may plead in general terms that the contract or assurance on which the action is brought was for the payment of interest at a greater rate than is allowed by law. * * * Upon such plea the court shall direct a special issue to try and ascertain: * * * (d) if a verdict be found for the defendant upon the plea of usury, judgment shall be ordered for the plaintiff for the principal sum due, with interest at the legal rate, and, if any interest has been paid above the legal rate, the excess over and above that rate, shall be entered as a credit on the sum due; * * *."

This statute clearly intends that any defendant may, *when sued* upon the usurious contract, plead usury and be entitled to credit against the amount of the principal any usurious interest that has been paid. The right to make the defense is manifestly intended to be co-extensive in point of time with the right of the lender to maintain his suit to recover the debt or the remaining balance of it. This purpose of the statute, of course, cannot be carried out if laches is permitted to preclude the defense of usury on the part of the borrower before the entire debt it paid.

If, under the statute, the borrower is so protected in the matter of his defense of usury against the suit of the lender, it would be entirely illogical if the borrower's affirmative right against the lender were not equally protected. To my mind, the statute makes it clear that he is so protected.

Code 47-6-8 reads in part as follows (emphasis supplied):

> "*Any borrower* of money * * * may exhibit a bill in equity against the lender, and compel him to discover upon oath the money or thing really lent, and all bargains, contracts, * * *; and, if it appear that more than lawful interest was reserved, the lender shall recover his principal money or other thing with six per cent interest only, but shall recover no costs. *If property has been conveyed to secure the payment of the debt,* and a sale thereof is about to be made, or is apprehended, an injunction may be awarded to prevent such sale pending the suit.* * *"

It will be observed that in this section, again, the only limitation placed upon the right of the borrower to bring his suit for affirmative relief is the fact that the debt remains unpaid, and, in the event it is secured by mortgage or trust deed, no sale has taken place. It will be observed further that the plaintiffs in the suit at bar are exactly within the terms of the statute.

Both these statutes, I think, should be read in the light of the fact that formerly there was a limitation of one year upon the right to recover paid usury. (Code of Virginia 1860, Chapter 141, Title 42, Section 8.) That limitation has been repealed, apparently in accord with a legislative purpose to permit the collection of usury to be defeated at any time, and to throw no restriction in the way of recovering usury that has actually been paid excepting the general statute of limitations.

I think, also, that it is highly important to remember the broad distinction between our statute which makes an usurious transaction absolutely *void* as to the excess of interest, and statutes differently worded, as is that of Virginia, which simply make the consideration illegal as to the excess. The broad rights conferred upon the borrower by our statute conform to the fact that the usurious part of the transaction is rendered an absolute nullity. To say that laches bars the defense of usury (and I think that even where it is affirmatively asserted by the borrower, it is tantamount to a defense) is, in effect, saying that the contract which the statute renders absolutely void may nevertheless be enforced.

Of course, I realize the hardship upon the defendants, who were not parties to the usurious contract and had no knowledge of it, that would be worked by establishing what I regard as the necessary construction of our statute. But this Court has recently reiterated its former holding to the effect that a note in the hands of an innocent purchaser for value may be purged of usury, and has disapproved the case of *Kessel* v. *Cohen,* 104 W. Va. 296, 140 S. E. 15, insofar as it held to the contrary. *Artrip* v. *Peters,* 114 W. Va. 819, 174 S. E. 524. If the defense of usury follows negotiable paper in spite of the negotiable instruments law, then it does not seem to me that laches can be held to bar it in the face of a statute plainly providing for its assertion and making no restriction as to time.

It would seem that under the rule laid down in the principal opinion that an innocent holder of negotiable paper tainted with usury could show that prior parties to the paper were insolvent, and be able to maintain the defense of laches because the borrower had failed to assert his statutory right until a time when the innocent purchaser could not be made whole by a recovery against the original lender. Of course, if the borrower could collect direct from the original lender, there would be little use of the rule permitting usury to be purged as against paper in the hands of an innocent holder.

It is quite true that in the case of *Societe Fonceire* v. *Milliken,* 135 U. S. 304, 10 S. Ct. 823, 34 L. Ed. 208, the United States Supreme Court held that the lapse of approximately two years from the date of a judgment at law would bar the right of the borrower to have the judgment purged of usury. It will be observed that in this case the court was dealing with a *judgment at law* that had been rendered almost two years before it even sought to purge it of usury. Even under these circumstances, however, the court was particular to point out that its holding was *independent of statute.* It used this language: "Obviously, defendant was proceeding under the statute, which we have seen has no application; and independently of statute, delay unexcused is fatal."

For the reasons stated, I respectfully dissent from the holding of the Court in the fifth point of the syllabus and from the discussion of that proposition contained in the principal opinion.