WILLIAMSON PAINT MANUFACTURING COMPANY *v.* GEORGE WASHINGTON LIFE INSURANCE COMPANY *et al.*

(Nos. 7203, 7203-A)

Submitted March 23, 1932.   Decided April 19, 1932.

*Coleman, Thompson & Woodroe,* for appellant Paint Co.

*McCabe & McCabe, R. N. Stephens, Jr., Price, Smith & Spilman,* and *J. M. Woods,* for appellant George Washington Life Ins. Co.

*Staige Davis* and *Joe L. Silverstein,* for appellee Georgia May Williamson.

LIVELY, JUDGE:

In this suit to recover the proceeds of a $10,000.00 policy insuring the life of C. E. Williamson, separate claims thereto were asserted by Williamson Paint Manufacturing Company, which instituted this suit, and Georgia May Williamson, widow of the insured and the named beneficiary at the death of Williamson; and the insurer, George Washington Life Insurance Company, denied liability.

In 1924, Williamson Paint Manufacturing Company (hereafter called ''Paint Company'') was in financial distress, and a resolution passed by its board of directors authorized its president (1) to borrow from the George Washington Life Insurance Company (hereafter called ''Insurance Company'') the sum of $6,000.00, evidenced by its note or bond, (2) to give a deed of trust on a parcel of land owned by the Paint Company, as security for the loan, and (3) as additional security, ''to apply for, obtain, and pay for life insurance in the amount of $10,000.00 on the life of C. E. Williamson, and the treasurer is authorized to pay the premiums on such insurance during the life of said loan. And said policy or policies of insurance shall be assigned as further security for the payment of the loan.'' There-

after, C. E. Williamson, then stockholder in and manager of the Paint Company, made application for and obtained the life insurance policy involved in this suit, naming the Paint Company as beneficiary, but reserving the right to change the beneficiary, and, as the Paint Company alleges, without its knowledge of such fact. The deed of trust, dated May 15, 1924, and acknowledged by A. A. Lilly, president of the Paint Company, on July 1st, following, was prefaced with the resolution above mentioned. The Paint Company and Williamson were parties to the trust deed, wherein the Paint Company bound itself, during the continuance of the loan, that C. E. Williamson should maintain in the Insurance Company a life insurance policy in an amount not less than $10,000.00, "payable to such beneficiaries as he may designate, but subject always to this trust", the premiums due on such policy to be paid by the Paint Company, which, together with Williamson, assigned to the trustee for the trust purposes, "all rights, title and interest in said policies, together with all moneys which may be now due or hereafter payable thereunder, and all dividends, benefits, options and advantages to be derived therefrom." The Insurance Company had the right (option) to pay premiums on the policy in the event that the Paint Company did not do so, and the trust deed stood as security for any amounts so paid.

In February, 1928, Williamson disposed of his holdings in the Paint Company and severed his connection with it; and on February 23, 1928, the Paint Company in a letter to the Insurance Company gave notice of Williamson's severance of relation, asked for cancellation of the policy, but requested credit on its debt (which had been reduced to $4,000.00) of the cash surrender value of the policy. The last paragraph of the letter stated: "Until this request has been complied with we do not waive our rights as beneficiary in said policy." On the following day, Williamson sought, under the provisions of the policy which reserved to him the right to change the beneficiary, to substitute his wife's name in lieu of the Paint Company; and on February 28, 1928, the Insurance Company notified Williamson that the change had been made, adding, "This policy, as you know is assigned

to the George Washington Life Insurance Company as collateral security for a real estate loan, and is therefore held in our possession.''

The insurance policy, dated May 7, 1924, called for the payment of annual premiums, which was later changed to. semi-annual payments by endorsement on said policy, and provided that ''the payment of a premium or installment thereof shall not maintain the. policy in force beyond the date when the next premium or installment thereof is payable.'' Premiums were paid by the Paint Company until November 7, 1927, and for the premium installment due on that date the Paint Company executed a premium note. When the next payment became due (May 7, 1928), Williamson was no longer with the Paint Company and the beneficiary had been changed; and on June 6, 1928, Williamson wrote the Insurance Company asking .if the Paint Company was complying with its contract, and adding:

> ''If they are not complying with their contract, I want to know as I do not want this policy cancelled or encumbered in any way.

> All I ask is for them to fulfill their contract with you, and when they fail to do this, I am ready to take the policy over and keep the payments up, but I am not willing to have you keep the policy as security on their loan and me pay the premiums, as I have no connections with them whatever.''

On June 25, 1928, the Insurance Company notified Williamson the payment due on May 7th had not been made and that, ''if no settlement is received, the above premium will be advanced with interest at 6%, as indebtedness against your policy in accordance with the Automatic Non-Forfeiture Clause in your policy'', which reads as follows:

> ''After two full years' premiums shall have been paid on this policy, if any subsequent premium due hereon be not paid on or before its due date or within the period of grace allowed for said payment, the Company will, as of said due date advance the amount of the then current policy year's

premium or the unpaid portion or portions thereof, and charge the policy with a loan, to mature on the next succeeding policy anniversary of such amount that, if interest for the period of the loan at six per centum per annum be deducted in advance, the proceeds of said loan shall be exactly sufficient to repay all existing indebtedness and pay the then current policy year's premium or the unpaid portion or portions thereof. This provision is automatic, and will be carried out by the Company without any action on the part of the insured. Any indebtedness thus created shall be a first charge against the policy and all proceeds thereof, ranking in priority to the claims of any beneficiary or assignee.''

In July, 1928, the Paint Company instituted suit in which it sought cancellation of the policy and recovery of the cash surrender value thereof; and an injunction was issued against the Insurance Company's collecting any further premiums on said policy from the cash surrender value reserve. Answers were filed by Williamson and his wife and by the Insurance Company. The gist of Williamson's answer is that he had a right under an agreement to change the beneficiary, that such sums of money as the Paint Company had paid as premiums, as well as the cash surrender value, should inure to his benefit, that the reason he had paid no premiums on said policy was the result of the Paint Company's conduct to cancel the policy and claim the cash surrender value, and that he can pay all premiums due or which have become due. In short, Williamson sought dismissal of the Paint Company's bill. In the answer filed by the Insurance Company, it admitted that as of October 7, 1928, there was a cash reserve of $614.55 in the policy and expressed its willingness to cancel the policy. The premium payment due on November 7, 1928, was not paid; and on January 13, 1929, Williamson died, after which the Paint Company had its injunction suit dismissed without prejudice; and this suit was then instituted. The common pleas court decreed that Mrs. Williamson was the legal beneficiary and as such entitled to recover from the Insurance Company the value of the policy; and that the Insurance Company retain from the proceeds

the amount due on the loan. The circuit court of Kanawha County refused an appeal, and from that judgment, the Paint Company and the Insurance Company appealed.

The issuance of the policy insuring Williamson's life grew out of the financial plight of the Paint Company and the insistence of the Insurance Company that the former insure one of its officers; and, in procuring the insurance, Williamson acted merely as a mediating agency—a go-between. The deed of trust mirrors the purpose of the policy and the intention of the parties. It must be remembered that it was executed subsequent to the issuance of the insurance contract, and, in reality, involved the interests of Williamson, the Paint Company and the Insurance Company. Therein, the Paint Company covenanted that Williamson would maintain a $10,000.00 policy of life insurance in the Insurance Company during the continuance of the loan and that the Paint Company would "pay the premiums on said insurance as the same became due and payable"; and Williamson, together with the Paint Company, assigned to the trustee in the deed of trust, for trust purposes, "all right, title, and interest in said policies, together with all moneys which may be now due or hereafter payable thereunder, and all dividends, benefits, options and advantages to be derived therefrom." When it is considered that Williamson transferred his rights under the policy for trust purposes and that premiums were being paid by the Paint Company, we conclude that the latter acquired a vested interest in the money accumulations or cash surrender· value fund, and it was this fund which it assigned as security for its debt. Therefore, so long as the debt remained unpaid, whatever sum accumulated under the policy was the property of the trustee to secure payment of the debt and did not become a fund for the payment of premiums due on the policy; and to that extent the assignment effected a modification of the policy and superceded the automatic loan provision therein. Under the provisions of the trust deed, upon failure of the Paint Company to pay premiums, the Insurance Company could elect to do so, thus augmenting the amount of the loan; and the Insurance Company paid the premium installment

due on May 7, 1928, applying the cash surrender value fund thereto under the terms of the automatic loan provision of the policy. While we do not think this was a proper use of the fund, as a practical matter the result is the same as if payment had been made by the Insurance Company from another source and charged as an item to increase the loan. In short, whatever was done by the Insurance Company in paying premiums was done for the benefit of the Paint Company.

As indicated above, the interest of the Paint Company arose under the trust deed wherein it covenanted to pay premiums. Without discussing its right to request cancellation of the policy and the insurer's compliance therewith, the insistence for cancellation illustrated by its letter and later by its suit and the injunction prohibiting the collection of premiums from the cash surrender value fund were tantamount to an expression by the Paint Company that it would no longer pay premiums. Failure to do so would have been a breach of its covenant, but the willingness expressed by the Insurance Company in its pleadings filed in the injunction suit to cancel the policy relieved the Paint Company of its obligation to pay premiums, and under this concession the rights of the Paint Company became fixed and incapable of enlargement on November 7, 1928,—the date to which payment of premium due May 7th continued the policy. We, therefore, conclude that as to the Paint Company the policy became inoperative because of the termination of its agreement to pay premiums; and whatever sum was then in the cash surrender value fund was available as security for the debt, for which amount the Paint Company is entitled to credit on its debt.

Payment of premiums was the consideration for the policy: it was that which gave currency to the contract. Williamson had notified the Insurance Company that he was willing to pay the premiums on condition that the policy should not stand as security for the debt. That condition never arose. Moreover, Williamson knew, or should have known, that so long as the Paint Company's debt remained unpaid he had no interest in the cash surrender value fund. The knowl-

edge that suit had been instituted to cancel his policy and that the Insurance Company was willing to do so placed upon him the burden of taking some step to continue the life of the policy, if he desired to continue it for his benefit. His willingness to pay premiums expressed in his answer was not enough. Willingness is but a gesture: actual or proffered payment is required. Since Williamson is to be charged with the import of the terms of the trust deed, and since there was no reserve fund from which to pay premiums for his benefit, the omission of affirmative action on his part to continued in force the policy, precludes any rights of Mrs. Williamson as his nominated beneficiary under the policy.

The judgment of the lower court is reversed and the cause remanded.

*Reversed and remanded.*