THE CITY OF HUNTINGTON, *etc. v.* GREENE LINE TERMINAL
COMPANY

(No. 9563)

Submitted January 12, 1944. Decided February 8, 1944.

*Campbell & McNeer* and *Okey P. Keadle,* for appellant.
*E. L. Hogsett,* for appellee.

RILEY, JUDGE:

In this injunction proceeding the City of Huntington sought and obtained in the Circuit Court of Cabell County a temporary injunction restraining Greene Line Terminal Company, a corporation, from removing its wharf boat, machinery, appliances, equipment and tools from premises leased to it ·by said City and used by the lessee in the maintenance and conduct thereon of a public wharf, and

from discontinuing its service to shippers under the ordinances and franchise and deed of lease to it from the municipality. The circuit court heard the matter upon bill and answer and affidavits in support of the latter pleading, and denied defendant's motion to dissolve the temporary injunction. Thereafter defendant obtained this appeal here.

From the pleadings and exhibits the following allegations appear: Pursuant to, and as authorized by, an ordinance enacted by the Common Council of the City of Huntington, the municipality in 1904 leased to Dr. R. E. Vickers, doing business as Huntington Wharf & Storage Company, a parcel of land at the end of Tenth Street to be used as a public wharf under a franchise for a period of fifty years. Therein Vickers covenanted to perform the agreements imposed by the ordinance, which is copied verbatim into the lease, and in which it was provided *inter alia* that the lessee "shall erect and maintain a Warehouse on said Wharf at or near the top of the grade, of sufficient dimensions to accommodate shippers by water to and from the City of Huntington * * * and shall procure and at all times maintain a proper, suitable and sufficient wharf boat at said Wharf, over which to receive and discharge all freight * * *". The lessee covenanted to sell and convey to the City at the expiration of ten years, and to deliver to the City at the expiration of the lease, the wharf boats, buildings, inclines, engines, cars and other appurtenances in use by the lessee upon the leased premises.

In 1926 Greene Line Terminal Company acquired said lease and franchise from Vickers. In 1929 the City of Huntington modified the provisions of the earlier ordinance so that under the new arrangement defendant no longer had an exclusive wharfage franchise. The requirement of the agreement of 1904 that the lessee collect a wharfage fee (of which lessee retained ten per cent as commission) was eliminated, the annual license payment of two hundred dollars was reduced to one hundred dol-

lars, and the municipality was given the right to elect, at the expiration of the lease, to purchase "all of the improvements upon such leased premises" upon six months' written notice prior to the expiration date. Until February 1, 1943, the date on which plaintiff's bill of complaint was filed and the temporary injunction awarded, the defendant had provided and maintained a wharf boat, although it denies that the wharf boat has been maintained on the leased premises as plaintiff alleged in its bill of complaint.

The bill of complaint alleged that shippers from the wharf were notified by defendant that its services would be discontinued as of February 1, 1943, and that no notice of such intention was given the municipality. In the same pleading it was asserted that defendant had a boat coming up the Ohio River on that day for the purpose of removing the wharf boat from the premises to another state "in which event the City of Huntington would be without a wharf boat or wharf boat facilities and shippers in and around the City of Huntington would be unable to either ship or receive freight by boat at the City of Huntington", which, as plaintiff alleges, would be in violation of its ordinance and franchise, and that if defendant is permitted to remove its wharf boat and machinery and equipment from the premises, plaintiff will be unable to assert and enforce any claim it may have for damages for breach of the contract in any court of this State, because the defendant proposes to remove all such property owned by it to another state.

Defendant denies that it notified shippers that it would discontinue services, but avers on information and belief that Greene Line Steamers, Inc., an Ohio corporation, notified shippers that on and after February 1, 1943, it would cease to accept freight either to or from that City, and that the Ohio corporation gave such notice to defendant. These assertions are supported by affidavit of the secretary of Greene Line Steamers, Inc., filed by defendant.

Defendant denies that it intended to remove all tools, appliances, machinery and equipment used in connection with the leased premises; that its wharf boat is located on the leased premises; that plaintiff has no remedy except in a court of equity; that plaintiff would be unable to assert and enforce in a court in this jurisdiction any claim it may have against defendant for damages by reason of the franchise and deed. Defendant's position is that it is under no obligation to perform any of the provisions of the ordinance and franchise or deed, either as originally enacted or executed, or as amended in 1929. Defendant asserts that plaintiff's only right is a forfeiture and termination of the lease and franchise in accordance with the express provisions thereof. Further defendant explains that at the time of passage of the ordinance in 1904 and the amendment thereof in 1929, there was considerable river traffic over the wharf facilities involved herein "so that the operation thereof was a profitable enterprise as it was intended to be" but that prior to 1935 conditions began to change with the result that two steamers operating a regular freight service between Charleston, West Virginia, and Cincinnati, Ohio, and stopping regularly at Huntington became so unprofitable that this service was discontinued, and thereafter a small packet steamer named "Evergreen" continued to run between Cincinnati, Ohio, and Huntington carrying small amounts of freight and making more or less regular trips and that the business continued to decline; and, upon information and belief, defendant says that the operation of the packet steamer became less and less profitable so that on February 1, 1943, the operation thereof to Huntington was discontinued by its owners. Defendant avers that for three years preceding the institution of this proceeding there has not been sufficient freight traffic on the Ohio River for the City of Huntington to justify the use of the warehouse which has not been used for that period of time. In an affidavit the secretary of Greene Line Steamers, Inc., states that the "Evergreen" was operated at a loss from

1937, in which year the loss amounted to $6,702.55, as compared with a loss of $17,309.01 in 1942. Defendant avers that after February 1, 1943, when the packet steamer made its last trip "there has been neither freight nor passenger traffic passing over said facilities", and that this "condition is not a temporary one but is a permanent condition". There is a further allegation that "there is no reasonable expectation that there will during the remainder of the term of the said franchise be any resumption of river traffic over and through said wharf facilities", and that the further maintenance of wharf facilities at Huntington would be a futile and useless thing.

The answer further avers that the wharf boat involved is of great value to Greene Line Terminal Company and to protect it from damage that Company has been required during the pendency of this suit to maintain an experienced river captain at the boat at all times and has been required to employ a large number of laborers for the purpose of moving the boat to and away from the shores of the river as the waters rise or recede, requiring the defendant to expend large sums of money which have not benefited either the City of Huntington or any shipper in and about the City of Huntington in any degree. It avers further that it owns valuable real estate within the limits of the City of Huntington and therefore denies that injunction is necessary to protect any rights which the plaintiff City may have. It avers also that the continuance of the injunction does not further the interest or rights of the City or any shipper desiring to use river traffic but serves only to injure the rights of defendant.

The affidavit of E. V. Rawn, president of the Ohio River Dredging Company, which operates a number of boats on the Ohio River, is to the effect that he is chairman of the Water Transportation Committee of the Huntington Chamber of Commerce; that a short time prior to February 1, 1943, it became known that the Ohio corporation proposed to discontinue the packet service, and that the

committee of which he was chairman was requested by the Chamber of Commerce to see what could be done to prevent the loss of the packet service to Huntington. At the committee's suggestion the injunction to prevent Greene Line Terminal Company from moving its wharf boat from Huntington was obtained. Thereafter the committee made a careful investigation to obtain the facts relative to continued river packet service, and the committee reached the conclusion "that the day of the packet freight business on the river is practically at an end", that competition from truckers and improved railway service "is more than the packet boat can compete with successfully", and that the committee was "unable to interest any responsible person or corporation in taking over this business, and we were unable to find any Huntington shippers who were desirous of using river transportation of the kind formerly offered by the 'Evergreen'." W. S. Rosenheim, managing director of the Huntington Chamber of Commerce, in an affidavit states that following the granting of the injunction herein it was proposed that there be formed a syndicate of interested people in Huntington and other Ohio River towns between Huntington and Cincinnati which would operate a freight packet, but investigation showed the plan not to be feasible and it was abandoned. His affidavit includes the further statement that the Chamber of Commerce and its committee "came to the conclusion that it was not possible to secure the operation of packet freight service on the Ohio River for the City of Huntington."

There is authority in this jurisdiction that dissolution of a temporary restraining order is largely a matter of judicial discretion. *Kessel* v. *Cohen,* 104 W. Va. 296, 140 S. E. 15; *State* v. *Navy,* 123 W. Va. 722, 17 S. E. 2d 626. The significance of the rule is emphasized, in the instant proceeding, because this appeal is from an interlocutory decree, permissive under Code, 58-5-1. *Huffman* v. *Chedester,* 126 W. Va. 73, 27 S. E. (2d) 272, 274. The answer filed by defendant is not in conflict with the mate-

rial factual allegations of the plaintiff's bill but seeks the avoidance of the injunction by setting up the disappearance of river traffic and the hardship, from an economic standpoint, which attends the continuation of the restraining order. The affidavits filed by defendant, in support of its answer, are in reality corroborative of the equities upon which defendant relies for relief. "If the defendant admits the equity in the bill, but sets up new matter of defense, on which he relies, the injunction will be continued till the hearing. 2 Tuck. Bl. Comm. 478." *Grobe* v. *Roup*, 46 W. Va. 488, 490, 33 S. E. 261; see also Miller's Hogg's Eq. Procedure (3d Ed.) Vol. 1, page 857.

Of course, if plaintiff's bill of complaint upon which the injunction is predicated contains no equity in plaintiff's favor, there would be no occasion for refusing to dissolve the injunction. However, in plaintiff's bill it is asserted that defendant was under an obligation at all times during the period of the lease and franchise to "maintain, a proper, suitable and sufficient wharf boat at said wharf", and to pay to the City of Huntington a license fee of $100 per annum during the continuance of the lease and franchise, as well as to permit said City under its option to purchase at the expiration of the lease all of the improvements upon the leased premises. While defendant seeks to circumvent the burden because of the disappearance of river traffic, it apparently, so far as the record discloses, has made no effort to surrender the lease and franchise which in the past, according to its own answer, have been valuable rights, and productive of economic benefits to the owners thereof. Undoubtedly, had the City of Huntington, during the days when river traffic was heavy, attempted in any wise to terminate these rights, defendant would have resisted such effort. We do not deem it necessary or proper at this time to consider the issue of whether the City of Huntington would be under an obligation to accept a surrender of the lease and franchise, or either of them. Nor is it necessary, on this

470

appeal, to decide whether, under the ordinances and franchise, defendant is under the obligation to maintain and operate a wharf boat at the leased premises. Certainly if it is, it cannot escape such obligation so long as it retains the franchise and lease. True, counsel for defendant in argument in this Court indicated their client's willingness to surrender the lease and franchise. In *Williamson Paint Company* v. *George Washington Life Insurance Company*, 112 W. Va. 150, 157, 164 S. E. 239, the Court stated: "Willingness is but a gesture: actual or proffered payment is required." So here actual or proffered surrender is requisite. We do not undertake herein to determine the efficacy of the defense upon which defendant relies to avoid its obligation under the lease and franchise since that is a matter for determination on a final hearing of the merits in this proceeding. We have concerned ourselves in this opinion solely with the issue of whether the trial court has abused the judicial discretion with which it is vested in the matter of dissolving the temporary injunction. Upon the record we cannot say that the trial court erred and therefore the interlocutory decree refusing to dissolve the injunction is affirmed and the case remanded.

*Affirmed and remanded.*